DENHAM *v.* STATE.

Opinion delivered November 18, 1929.

*Wm. H. Glover,* for appellant.

*Hal L. Norwood,* Attorney General, and *Pat Mehaffy,* Assistant, for appellee.

HART, C. J.   Brady Denham prosecutes this appeal to reverse a judgment of the circuit court revoking a suspension of sentence against him for unlawfully selling intoxicating liquors.   On the 17th day of January, 1927, at a regular term of the Hot Spring Circuit Court, Brady Denham entered a plea of guilty to the crime of selling intoxicating liquors.   The court, upon the request of the prosecuting attorney, and because it appeared that the defendant had already served seven months in the Federal prison for the same offense, granted him a suspension of sentence conditioned on his making a new bail

bond in the sum of $500, and upon good behavior. It was, therefore, ordered and adjudged that the suspension be granted upon the conditions above set forth.

On the 30th day of July, 1929, at a regular term of court, upon motion of the prosecuting attorney and after hearing the evidence of witnesses, the court found that the suspension of sentence should be revoked, and an order to that effect was entered of record.

Upon a hearing of the motion to revoke the suspended sentence, two revenue officers of the United States and a deputy sheriff of Hot Spring County were introduced as witnesses by the State. According to their evidence, they went to the house where Brady Denham and Clyde Otts were living in Hot Spring County, and looked around the woods trying to find signs of a still being operated. They finally came to a spring near the house, and, at a little distance from it, they found a still set which, from the circumstances around it and from their experience as revenue officers, they thought had been operated a day or two before. The spring near which it was situated had plain tracks from there to the house where Brady Denham and Clyde Otts lived. From the appearance of things around there, Denham and Otts got their drinking and using water from the spring, and also washed their clothes there. In a little out-house, which was locked up, they found two barrels of mash and a cap and stillworm. The barrels of mash had been put down into a hole in the ground, and then covered up. They waited there for a while and saw Brady Denham and Clyde Otts coming towards the house. When they arrested them, Denham told Otts that this would mean Tucker Farm (meaning the penitentiary farm) for them and also exclaimed, "Oh, my God! what will become of my wife and children now?" When the officers first saw Denham and Otts coming towards them, they turned around and started to go back in the direction from which they came; but the officers stopped them and then arrested them.

According to the testimony of Clyde Otts, the still belonged to him, and Denham was not in any way interested in its ownership or operation. He said that he had only made one run with the still, and that Denham had nothing to do with it.

It was first contended that, because more than a year had elapsed between the date of the suspension of sentence by the circuit court and the order of that court revoking the suspension of sentence, that the order of revocation was void. This is based on the fact that, under § 6161 of Crawford & Moses' Digest, any person convicted of selling intoxicating liquors shall be guilty of a felony and imprisoned in the State Penitentiary for one year.

In *Davis* v. *State,* 169 Ark. 932, 277 S. W. 5, this court held that the circuit court had no authority to suspend execution of sentence indefinitely in the absence of a statute conferring it. It was held that the act conferring the authority upon circuit courts by the Legislature of 1923, did not have the effect to stay the execution of sentences already pronounced. In that case it was also said that the defendant, while at large under void orders of the circuit court to which he had assented, was in the same situation that he would have been had he escaped from custody. Therefore, the court said that the sentence of imprisonment was not satisfied by the lapse of time after it was pronounced, but could only be satisfied by suffering the imprisonment imposed by the sentence.

The Legislature of 1923 passed an act authorizing the circuit courts to suspend sentences under certain conditions, and also giving them the power to revoke the suspension of sentences for certain reasons. Acts of 1923, p. 40, and Castle's Supplement to Crawford & Moses' Digest, §§ 3229a and 3229b. The first section provides that the circuit court shall have authority, if it shall deem it best for the defendant and no harm to society, to postpone the pronouncement of final sentence and judgment upon such conditions as it shall deem proper and

reasonable as to probation of the person convicted. The second section gives the circuit court the power to revoke the suspension and postponement of sentence, and to pronounce sentence and enter final judgment in each cause whenever that course shall be deemed for the best interests of society and such convicted person. The statute itself does not confine the time within which the court may revoke the suspension of sentence.

In *Ketchum* v. *Vansickle,* 171 Ark. 784, 286 S. W. 948, the court held that, where the circuit court, without authority, suspended the execution of a sentence for one year in the penitentiary, to which suspension the defendant consented, the court had authority, more than a year later, to direct that the sentence be enforced. Again, in *Stocks* v. *State,* 171 Ark. 835, 286 S. W. 975, it was held that, where a sentence of imprisonment was suspended in 1910 with the defendant's consent, and was imposed in 1926, the sentence was not barred by the statute of limitations. The court recognized the rule laid down in the Davis case that a sentence of imprisonment is satisfied, not by lapse of time after it is pronounced, but by the actual suffering of the sentence imposed by it. The reason is that the time during which a sentence may be carried into execution is not provided by statute, and forms no part of the judgment of the court. That rule applies here in the absence of a statute limiting the time within which the court may revoke the suspended sentence.

In the case at bar, the sentence was suspended during good behavior. It will be remembered that the statute gives the circuit court the power to postpone final sentence and judgment upon such condition as it shall deem proper and reasonable as to probation of the convicted person. The court had the right to impose this condition.

In *Huyser* v. *Commonwealth,* 116 Ky. 410, 76 S. W. 174, it was contended that so much of the liquor statute as empowered the court, after two convictions for a violation of its provisions, to require of the convicted person a bond

for his good behavior, was void for uncertainty because it failed to indicate in express language what was meant by the words "good behavior." The Court of Appeals of Kentucky held against that contention, and said the defendant was placed in a state of trial with respect to the subject-matter of the statute, and that he must for a given time so conduct himself as to be amenable to the statute. The court further said that the defendant must keep himself within the letter and spirit of the statute by refraining from any further violation of its provisions during the period of probation.

In *State* v. *Greer,* 173 N. C. 759, 92 S. E. 147, the court said that, when judgment is suspended in a criminal action upon good behavior or other conditions, the proceedings to ascertain whether the terms have been complied with are addressed to the reasonable discretion of the judge of the court, and do not come within a jury's province.

This would also result from our own decisions holding that a statute authorizing and empowering circuit courts to suspend sentences under certain conditions to be constitutional. It would seem that the language of the statute authorizing the suspension of the sentence and also giving the circuit judge the power to revoke the suspension of the sentence when that course shall be deemed for the best interest of society and for the convicted person, expressly conferred upon the circuit court the power to pass upon the question without the aid of a jury.

It cannot be said that the finding of the circuit court that the suspension of the sentence should be revoked was either unreasonable in itself or without evidence to support it. According to the testimony of the revenue officers, the still was found about 150 yards away from the house in which the defendant lived. It was close to a spring where he and another person who lived in the house with him got water for family use, and where their family washing was done. The cap and worm to the still were found in an outhouse nearby, which was locked up,

and two barrels of mash ready for distillation were also buried in the ground in the outhouse. When he was arrested, Denham stated to Otts that this meant the Tucker Farm (the penitentiary farm) for them. This was in the nature of a confession, and the circumstances surrounding the whole transaction showed that the defendant realized that he was at least guilty of having a still in his possession. This was a kindred crime to the one he had been convicted of, and warranted the court in setting aside or revoking the suspension of sentence.

Therefore, the judgment will be affirmed.