PEOPLE v PETERSON

OPINION OF THE COURT

1. CRIMINAL LAW—SENTENCING—CREDIT—TIME SERVED—STATUTES.

   A sentencing judge must give a defendant credit for the time
   served in jail prior to sentencing (MCLA 769.11b).

2. CRIMINAL LAW—PROBATION—CONDITIONS.

   The Court of Appeals is not empowered to substitute its judgment
   for that of the trial judge on lawful conditions of probation.

3. CRIMINAL LAW—PLEA OF GUILTY—WAIVER—NONJURISDICTIONAL
   DEFECTS.

   A plea of guilty waives all nonjurisdictional defects in the pro-
   ceedings, therefore, the alleged error of the district court in
   binding the defendant over to circuit court for trial without
   sufficient evidence of probable cause was waived where defend-
   ant pleaded guilty to a lesser charge, where the district court
   had jurisdiction over the offense charged and the persons
   charged therewith; the circuit judge is empowered to dismiss or
   remand charges if the district judge exercises his jurisdiction
   improperly but the misexercise does not deprive either court of
   jurisdiction.

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law §§ 545, 606.

[2] 59 Am Jur 2d, Pardon and Parole § 85.

[3] 21 Am Jur 2d, Criminal Law § 495.

[4, 5] 21 Am Jur 2d, Criminal Law §§ 486–491, 505.

   Court's duty to advise or admonish accused as to consequences of
   plea of guilty, or to determine that he is advised thereof. 97
   ALR2d 549.

[6] 59 Am Jur 2d, Pardon and Parole §§ 92–95.

   Right to notice and hearing before revocation or suspension of
   sentence, parole, conditional pardon, or probation. 29 ALR2d
   1074.

[7, 9] 59 Am Jur 2d, Pardon and Parole § 88.

   68 Am Jur 2d, Searches and Seizures § 10.

[8] 59 Am Jur 2d, Pardon and Parole § 72.

4. CRIMINAL LAW—PLEA OF GUILTY—ACCEPTANCE OF PLEA—SENTENC-
ING—PROBATION.

Failure to advise a defendant when accepting a plea of guilty that a probation violation can result in a maximum sentence greater than that prescribed by statute for the crime itself was not error.

5. CRIMINAL LAW—PLEA OF GUILTY—ACCEPTANCE OF PLEA—PROCE-
DURE—COURT RULES.

A court rule governing guilty pleas must be followed literally, but there is no requirement of sequence in complying with the provisions of the rule; therefore, no error resulted where the judge elicited from the defendant the facts of the offense charged before advising her of the constitutional rights she was waiving by entering her plea (GCR 1963, 785).

6. CRIMINAL LAW—PROBATION—CONDITIONS—ANTISOCIAL CONDUCT—
DUE PROCESS—VIOLATION OF PROBATION—NOTICE.

A prohibition against antisocial conduct as a condition of a defendant's probation does not violate the probationer's right to due process; however, a charge that a probationer violated such a provision must be set out in concrete terms capable of understandable and definitive evaluation to provide adequate notice of the offense.

7. CRIMINAL LAW—PROBATION—CONDITIONS—SEARCHES AND SEIZURES
—UNREASONABLENESS—WAIVER.

A person who accepts probation and consents to its terms may not waive the constitutional protection against unreasonable searches and seizures; a probationer's signed acceptance of a term of probation which waives this constitutional protection is in legal effect coerced and thus rendered nugatory.

8. CRIMINAL LAW—PROBATION—CONDITIONS—RESTITUTION—JOINT LI-
ABILITY—STATUTES.

Restitution or reparation as a condition of probation is proper; it is well settled both in criminal and civil cases that where two or more persons act in concert, each will be liable for the entire result, thus a criminal defendant may be held jointly and severally liable for the whole amount of the restitution ordered made to the victim of a crime (MCLA 771.3).

PARTIAL CONCURRENCE BY DANHOF, P. J.

9. CRIMINAL LAW—PROBATION—CONDITIONS—SEARCHES AND SEIZURES
—SEARCH WITHOUT WARRANT.

*Probation is optional and essentially voluntary and a probationer,*

*who has been granted the privilege of probation on the condition that he submit at any time to a search without a warrant, may have no reasonable expectation of traditional Fourth Amendment protection; the condition is a legitimate and necessary instrument to assist in the regulation of a probationer's activities.*

Appeal from Monroe, James J. Kelley, Jr., J. Submitted Division 2 March 13, 1975, at Lansing. (Docket No. 19746.) Decided June 23, 1975.

Billie Lee Peterson was convicted, on her plea of guilty, of larceny from an automobile. Defendant appeals. Affirmed in part, reversed in part and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *James J. Rostash,* Prosecuting Attorney (Prosecuting Attorneys Appellate Service, *Edward R. Wilson,* Director, and *Lee W. Atkinson,* Special Assistant Attorney General, of counsel) for the people.

*Larry R. Farmer,* Deputy State Appellate Defender, for defendant.

Before: DANHOF, P. J., and D. E. HOLBROOK, JR. and O'HARA,* JJ.

O'HARA, J. This is an appeal of right from a plea of guilty to larceny from an automobile. MCLA 750.356a; MSA 28.588(1). Defendant was sentenced to 180 days in jail, 160 immediately and 20 days when directed. No credit was given for the 14 days she had served at the time of sentence and she was placed on 5 years probation.[1] Manifestly the

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] MCLA 769.11b; MSA 28.1083(2), mandates that defendant be given credit for the time she served in jail prior to sentencing.

sentence was infirm and the case must be re-
manded for resentencing or the sentence corrected
by this Court. We opt for the former because other
issues are involved.

The main thrust of appellant's argument is that
the conditions of probation are onerously unrea-
sonable. Her counsel on appeal attacked them
with a vigor and intensity which bespoke deep
conviction. She characterized them as impossible
of performance, impermissibly vague and constitu-
tionally infirm as violative of due process.

Before addressing ourselves to the multiple as-
signments of error, we must again make clear that
we are not a sentence review board.

We are not empowered to substitute our judg-
ment for that of the trial judge on *lawful* condi-
tions of probation *[People v Higgins,* 22 Mich App
479; 177 NW2d 716 (1970)] however much we may
regard them as unduly harsh. Thus our discussion
as to the conditions of probation will of necessity
be more limited than appellant seeks.

In the sequence of assignments of error, the first
is thus phrased in appellant's brief:

*"Appellant's plea of guilty to larceny from an auto-
mobile was coerced by the threat of prosecution on a
charge for which probable cause to bind her over did
not exist and appellant is therefore entitled to a new
trial."*

This is in a sense a two-pronged argument that
is developed as follows. There was insufficient
evidence adduced at the preliminary examination
to justify binding appellant over on the original
charge of unlawfully driving away a motor vehicle.
MCLA 750.413; MSA 28.645. Having thus been
improperly bound over and thereafter tendering a
plea of guilty to the offense of larceny from an

automobile appellant was, in fact, or in legal effect, coerced into pleading guilty to the lesser charge. Appellant had no real choice. This being the case appellant claims that the assignment of error was raised to jurisdictional level. This being so her plea of guilty did not waive all error, but only all *nonjurisdictional* error. We are unable to agree with appellant's contentions. The fallacy in the position is the all too frequent confusion between a *want* of jurisdiction and error in the *exercise* thereof. See *Buczkowski v Buczkowski,* 351 Mich 216, 221–222; 88 NW2d 416 (1958). In this case the district judge had unquestioned jurisdiction over the offense charged and the persons charged therewith. If he *exercised* this jurisdiction improperly the circuit judge was empowered to dismiss or remand. The misexercise does not strip either court of jurisdiction. See Justice LEVIN's discussion in *Genesee Prosecutor v Genesee Circuit Judge,* 391 Mich 115; 215 NW2d 145 (1974).

We find no jurisdictional infirmity. We follow the well-established rule that a plea of guilty waives all nonjurisdictional defects. *People v Potts,* 45 Mich App 584; 207 NW2d 170 (1973), *People v Killingbeck,* 49 Mich App 380; 212 NW2d 256 (1973).

The second question presented is:

> *"Where the trial judge failed to inform appellant that probation as a sentence can contain severe restrictions and conditions which if violated can result in a maximum sentence greater than that prescribed by statute, was appellant's plea not understandingly made and must her conviction be reversed?"*

Discussion of this issue is fruitless. There is no case law directly in point cited. We can find none independently. If this requirement is to be written

into our criminal procedure it will have to be done by the Supreme Court under its rule-making power, or possibly by the Legislature in the statute authorizing probation. We do not find the error claimed meritorious.[2]

Third, appellant asserts that:

> "*Appellant's guilty plea was not understandingly and voluntarily made where the trial judge elicited from the appellant facts of the offense charged before advising her of the constitutional rights she was waiving by entering her plea.*"

*People v Snyder,* 53 Mich App 249; 218 NW2d 770 (1974), is not controlling (even if it stands for what the appellant contends). The plea in *Snyder* was taken *before* the new GCR 1963, 785. Appellant can't have it both ways. The Supreme Court has made a virtual straitjacket out of 785, *supra,* as far as the trial bench and this Court is concerned. Its language must be followed literally. Failure to do so is reversible error. We are not disposed to laminate the former rule on the one presently in force. The claim of error is not meritorious. We find no requirement of sequence in complying with its provisions.

Issue 4 concerning the failure to grant jailtime credit was disposed of earlier. It was error, mandating remand for resentencing or correction at the appellate level. We stated the reason for our choice.

Assignment of error number 5 is concerned with

---

[2] The plea-transcript discloses that the trial judge carefully explained to defendant, prior to accepting the proffered plea of guilty, that she could be sentenced to serve as much as 5 years in prison or that a fine in a specified amount could be imposed. In particular we note that he specifically informed defendant that: "It could be probation, it could be the entire 5 years in state's prison or something in between."

the claim of vagueness to the constitutional level of denial of due process. Frankly, the issue concerns us. One term singled out for attack is "antisocial conduct". That term was both a condition contained in the order of probation and a statutory ground for revocation or termination of probation as set forth in MCLA 771.4; MSA 28.1134. By itself, we agree it would be vague to the point of risibility for a prosecutor to file an information that "so and so" on such and such a date did commit "anti-social conduct" and expect an accused to plead to it. What is "antisocial" in an exclusive club in a sedate suburb and what are perfectly acceptable mores in a lusty metropolitan gathering place can be as far apart as the poles. We have read, to the point of ocular exhaustion, cases from Maine to Texas and California to Florida. While we are somewhat apprehensive as to a probationer being sufficiently apprised of the conditions of probation when he is proscribed from engaging in antisocial conduct,[3] we cannot ignore the basic fact that many jurisdictions other than our own impose and sustain conditions on a probationer which, in our view, are no more objectionable in terms of due process than the complained-of provision here involved.[4] We add a caveat. If viola-

---

[3] We have examined cases such as *People v George,* 318 Mich 329; 28 NW2d 86 (1947), and *People v Sutton,* 322 Mich 104; 33 NW2d 681 (1948), which we found helpful to a limited degree. However, they are distinguishable from the instant case.

Note also that this Court in *People v Martinez,* 20 Mich App 319, 324; 174 NW2d 14 (1969), made the following observation:

"The trial court under the applicable statute was empowered to terminate the probation based upon violation of the probation orders for any type of antisocial conduct when the court is satisfied that revocation would be in the public interest."

[4] In 18 USCA 3651 of the Federal probation statutes it is provided that the court having jurisdiction may "suspend the imposition or execution of sentence and place the defendant on probation for such period and upon such terms and conditions as the court deems best". Thus it has been held that initial granting of probation and the terms

tion of this provision is charged the specifics of the antisocial conduct will have to be set out in concrete terms capable of understandable and definitive evaluation. Anything less would raise grave due process questions as to the adequacy of notice.

Assignment of error 6 challenges what is denominated the "blanket search and seizure" provision in the order of probation.[5] It provides:

"That the person of probationer, and any and all premises and vehicles, owned or occupied by said probationer, shall be open to search at any and all times by the probation officer and by any law enforcement officers without a search warrant therefor."

We strike it down. Probation is a matter of grace and rejectable, we think, at the option of the probationer. But it is not a Bill of Attainder[6] for the period of probation.

Probation or parole is certainly no more stigmatic than incarceration. Thus if there be any

and conditions thereof rest in the discretion of the trial judge. *Berra v United States,* 221 F2d 590 (CA 8, 1955), *aff'd* 351 US 131; 76 S Ct 685; 100 L Ed 1013 (1956). This permits a court to place a convicted person on probation until he obtains "satisfactory employment". *Driver v United States,* 232 F2d 418 (CA 4, 1956). In 24 CJS, Criminal Law, § 1618(8), p 890, it is noted that courts have upheld as legal conditions which *inter alia* provide probationers shall maintain "good behavior" and work at "suitable employment". Other case authority recognizing a condition of "good behavior" includes: *State v Chesnut,* 11 Utah 2d 142; 356 P2d 36 (1960), *Denham v State,* 180 Ark 382; 21 SW2d 608 (1929). It has also been held that probation can be revoked if the defendant is "associating with lawless or improper persons", *People v Hunter,* 42 Cal App 2d 87; 108 P2d 472 (1940), has "abandoned [himself] to improper associates or a vicious life", *People v Rye,* 140 Cal App 2d Supp 962; 296 P2d 126 (1956), or is "habitually associating with lewd or vicious persons, or is indulging in vicious habits", *Reese v Page,* 410 P2d 883 (Okla Cr, 1966).

[5] The applicable constitutional provisions relative to searches and seizures are found in the US Const, Am IV, and Const 1963, art 1, § 11.

[6] US Const, art I, § 10, proscribes any state passing a Bill of Attainder. *See also* Const 1963, art 1, § 10.

logic in law, a probationer is no less deprived of all constitutional guarantees than the one incarcerated pursuant to sentence. Our Supreme Court held:

"It could not be seriously urged that the search and seizure made by the officers without defendant's consent or without a search warrant could not, nor likely would not, even have been attempted, had defendant been at liberty and his automobile been parked on his own premises. Defendant was not stripped of his civil rights and his constitutional safeguards merely because he was serving a sentence in the county jail for an unrelated misdemeanor. It would be a dangerous rule of law and an invitation to circumvent the constitutional guaranty against unreasonable search and seizure were the citizen convicted of a misdemeanor and in jail, possibly in default of payment of a fine, to be stripped of all his civil liberties." *People v Carr,* 370 Mich 251, 255; 121 NW2d 449 (1963).

If this means standard forms must be revised or a portion thereof x'd out, so be it. Better that, than police state powers over all probationers. We readily concede that there is much authority to the contrary. Our research has uncovered many cases from other jurisdictions which sustained the same imposition of consent to warrantless searches and seizures as were here imposed.[7] However, the waiver of protection against unreasonable searches and seizures is so repugnant to the whole spirit of the Bill of Rights as to make it alien to the essence of our form of government.

[7] For case authority generally upholding similar search and seizure provisions as imposed on parolees or probationers, *see inter alia: State v Mitchell,* 22 NC App 663; 207 SE2d 263 (1974), *People v Santos,* 31 AD2d 508; 298 NYS2d 526 (1969), *cert den* 397 US 969; 90 S Ct 1010; 25 L Ed 2d 263 (1970), *People v Mason,* 5 Cal 3d 759; 97 Cal Rptr 302; 488 P2d 630 (1971), *cert den* 405 US 1016; 92 S Ct 1289; 31 L Ed 2d 478 (1972).

We would not be understood by this holding to mean that one who accepts probation and consents to its terms cannot waive any constitutional rights. Many of these rights are waived daily in our criminal courts, the right to a trial by jury for example. They can be waived also as a condition of probation. But when the waiver is conditioned on the surrender of so hallowed a right, the so-called choice amounts to no choice at all. We hold the probationer's signed acceptance thereof was in legal effect coerced and thus rendered nugatory.

Assignment of error 7 would strike down the joint as well as individual liability of appellant for the whole of the restitution ordered by the trial court. Such is not the settled law.

We rely on our own statute and a well-reasoned California opinion squarely in point. That statute reads in pertinent part:

"The court may impose such other lawful conditions of probation, including restitution in whole or in part to the person or persons injured or defrauded, as the circumstances of the case may require or warrant, or as in its judgment may be meet and proper * * * ". MCLA 771.3; MSA 28.1133.

In *People v Flores*, 197 Cal App 2d 611, 616–617; 17 Cal Rptr 382, 385 (1961), the Court stated:

"Lastly, complaint is made as to the conditions of probation. The trial judge recited in the probation order that defendant and Elizabeth Barron were jointly and individually responsible for restitution to the county in the sum of $1,685 and that defendant's share thereof was established at $842.50. But, in case Elizabeth defaulted in the payment of any portion required of her to repay under the probation order (which orders appear to be reciprocal), defendant shall become liable for such portion, payable $25 per month through the probation

officer, and that defendant assume full financial support for his minor child.

"Defendant argues that he should be liable for only his one-half of the total, at the most, and not be held liable for his codefendant's one-half or for her omissions. The court concluded that the total loss by theft by both defendants, acting in concert, amounted to $1,685. The jury did not find the exact amount taken, but found it to be in excess of $200. It appears to us that the full amount ordered repaid has evidentiary support. Prosser on Torts (2d ed 1955) § 45, p. 225, holds:

" 'Where two or more persons act in concert, it is well settled both in criminal and in civil cases that each will be liable for the entire result.'

"See also *Gray v Sutherland,* 124 Cal App 2d 280, 290; 268 P2d 754 [1954]; *Reid v Robinson,* 64 Cal App 46, 58; 220 P 676 [1923]. Restitution or reparation as a condition of probation is expressly authorized by statute (Pen Code, § 1203.1) and is sanctioned by case authority *(People v Marin,* 147 Cal App 2d 625, 626; 305 P2d 659 [1957]).

"If the facts and circumstances indicate any error in the amount of restitution ordered or an injustice appears, the trial judge, upon proper application for modification of the terms of probation, is authorized to modify his original order. *(People v Marin, supra.)"*

The next assignment of error raised by defendant pertains to a condition of probation that she "remain in her home continuously from 9:00 p.m. each evening until 5:00 a.m. the following morning". The defendant has launched a full-scale attack on this curfew provision contending among other things that it is violative of her constitutional guarantee of equal protection and due process. A 9 p.m. to 5 a.m. curfew is pretty strong medicine for a young woman 25 years of age with no previous record. It is doubtful in our view that such an iron-clad 7-day curfew for 5 years would

have any rehabilitative effect upon the probationer, more likely we think the converse would be true. Since the case is being remanded anyway, perhaps the trial judge will consider relaxing some of its terms.

We have examined with care the other assignments of error (9 through 11). We see no reason to discuss them at any length. Number 9 seems to us to be an argument however enlightened and progressive that is essentially a matter of policy.[8] We conceive our role as adjudicating legal issues on legal grounds. We add gratuitously that the task is sufficient to take all our full conventional working days and a substantial amount of time theoretically our own.

Issue 11 has been disposed of by the Supreme Court in its recent opinion in *People v Milton,* 393 Mich 234; 224 NW2d 266 (1974).

Now as to assignment of error number 10 defendant asserts that she was denied her constitutional right to due process and effective assistance of counsel because of the inclusion in the presentence report of inaccurate information pertaining to prior criminal involvement which trial counsel erroneously did not refute.

---

[8] In connection with the contention that defendant's sentence is oppressive and an abuse of discretion we note the following conditions of probation which have been imposed and sustained by other courts:

That the defendant not associate with a particular person, *Willis v United States,* 250 A2d 569 (DC, 1969), that the defendant "not permit or allow persons to congregate or remain at her home after the hours of darkness", *State v Davis,* 244 NC 621, 622; 94 SE2d 593, 594 (1956), that defendant consent to periodic polygraph examinations as a basis to remain on probation, *State v Wilson,* 521 P2d 1317 (Or App, 1974).

Pertinent to this issue also is the comment by the Court in *Berra v United States, supra* fn 4, 221 F2d at 598, where it was observed:

"It seems rather anomalous to us that a person should complain of such an order of probation when it was within the lawful authority of the trial court to have given a sentence of * * * years [of] imprisonment and * * * fine * * * ".

We note that prior to imposing sentence the trial judge specifically afforded counsel the opportunity to advise the court of any circumstances that might properly bear on sentencing. The attorney representing defendant mentioned certain extenuating circumstances which he thought might influence the court to exercise leniency toward the defendant. In view of the allegations by defendant as to improper references to alleged criminal conduct contained in the presentence report it is also worthy of note that she specifically denied having any prior criminal record. We find this issue lacking in merit based upon the record before us.

The judgment is affirmed in part, reversed in part and remanded to the trial judge for further consideration and possible action. That part of the order relating to warrantless searches is specifically vacated and held for naught.

D. E. HOLBROOK, JR., J., concurred.

DANHOF, P. J. *(concurring in part, dissenting in part).* I concur in Judge O'HARA's opinion with the exception of his invalidation of the probation supervision condition discussed as defendant's sixth issue and referred to as the "blanket search and seizure" provision. As to this part of the opinion I must dissent. There appears to be no authority in support of the conclusion reached by the majority; and, more importantly, the provision is a legitimate and necessary instrument to assist in the regulation of a probationer's activities.

As the majority readily concedes, there is much authority contrary to the position they have taken. Diligent research has disclosed no reported cases in agreement, and the majority has cited none in their opinion. The only decision discussed by the

majority, *People v Carr,* 370 Mich 251; 121 NW2d
449 (1963), is not in point.

Comparing one on probation or parole to one
who is incarcerated to arrive at the conclusion
that the rights of the former should be no less
than those of the latter is to grossly misconceive
the nature and purpose of the two forms of punish-
ment. As recognized by the majority, probation is
"rejectable"; that is, optional and essentially vol-
untary. Imprisonment is not. The probationer or
parolee is given a choice. The prisoner is not.
Thus, as the Supreme Court stated in *People v
Carr, supra,* a person does not lose his civil rights
while incarcerated because he has not given his
consent. A probationer or parolee has given his
consent in return for more lenient treatment.

The leading case in this area, mentioned in the
footnote in the majority opinion, is *People v Ma-
son,* 5 Cal 3d 759; 97 Cal Rptr 302; 488 P2d 630
(1971), *cert den,* 405 US 1016; 92 S Ct 1289; 31 L
Ed 2d 478 (1972). In that case, the defendant had
been placed on probation which included a term
granting consent to warrantless searches almost
identical to that involved in the present case.
Acting pursuant to this waiver and without a
warrant, police officers who had reasonable cause
to believe that the defendant had participated in a
burglary, entered defendant's house, and con-
ducted a search which uncovered evidence linking
him to the crime. The trial court granted a motion
to suppress this evidence, and the prosecution
appealed. The Supreme Court of California re-
versed stating:

"We have heretofore suggested, however, that persons
conditionally released to society, such as parolees, may
have a reduced expectation of privacy, thereby render-
ing certain intrusions by governmental authorities 'rea-

sonable' which otherwise would be invalid under traditional constitutional concepts, at least to the extent that such intrusions are necessitated by legitimate governmental demands. (Citations omitted.) Thus, a probationer who has been granted the privilege of probation on condition that he submit at any time to a warrantless search may have no reasonable expectation of traditional Fourth Amendment protection." 5 Cal 3d at 764–765; 488 P2d at 633.

As mentioned by the majority, consent to warrantless searches on the part of probationers or parolees has been sustained in *State v Mitchell,* 22 NC App 663; 207 SE2d 263 (1974), and *People v Santos,* 31 AD2d 508; 298 NYS2d 526 (1969), *cert den,* 397 US 969; 90 S Ct 1010; 25 L Ed 2d 263 (1970). Other jurisdictions which have followed the reasoning of *People v Mason, supra,* include Nevada in *Himmage v State,* 88 Nev 296; 496 P2d 763 (1972), and North Dakota in *State v Schlosser,* 202 NW2d 136 (ND, 1972).

Probation requires supervision and guidance to avoid the repetition of past mistakes. To be effective, the supervision cannot be restricted by the limitations on governmental scrutiny which the Constitution guarantees to law-abiding citizens. Therefore, I would not vacate that part of the probation order relating to warrantless searches.