MR. JUSTICE DALY
dissenting:
I cannot disagree that the majority had the option to resolve this case on nonconstitutional grounds, if the same existed, and avoid ruling on the constitutional grounds presented by defendants. However, the majority involves itself in a long discussion of probable cause and at the conclusion makes a sweeping all inclusive ruling on the constitutional questions presented without discussion or authority, except for a Ninth Circuit case which is against the majority’s views, United States v. Consuelo-Gonzalez, 521 F.2d 259, and a California case which is not strong authority inasmuch in State v. Battit, 175 Mont. 433, 574 P.2d 998, (1978), this Court rejected the California approach to this problem and followed more rational jurisdictions.
The foundation questions presented to this Court for review are:
I. Whether a condition of probation authorizing unlimited search and seizure by law enforcement officers violates constitutional guarantees against unreasonable searches and seizures.
A. Defendant’s consent to unlimited search and seizure by law enforcement officers was not freely and voluntarily given.
B. A condition of probation authorizing unlimited search and seizure by law enforcement officers is contrary to the purpose of probation as a rehabilitative and reformative process.
C. The warrantless search of the defendant’s residence was unreasonable because it was unsupported by exigent circumstances.
II. A condition of probation authorizing unlimited search and seizure by law enforcement officers violates constitutional guarantees against self-incrimination.
The problem is presently in the early stages of development and definition by the courts. As an example neither the United States Supreme Court nor this Court has studied the matter or expressed an opinion. There exists a general split of authority among the *208 courts that have treated the issue and the trend seems to be toward expanding a probationer’s sphere of Fourth- Amendment protection. In any event the legal problems involved are serious and many. They concern basic human rights that are too fragile to be summarily disposed of in the cavalier manner engaged by the majority here.
Mr. Justice Frankfurter stated in Wolf v. Colorado, (1949), 338 U.S. 25, 27, 69 S.Ct. 1359, 1361, 93 F.Ed. 1782, 1785, that the Fourth Amendment protects the “security of one’s privacy against arbitrary intrusion by the police.” A more recent case, Tehan v. Shott, (1966), 382 U.S. 406, 86 S.Ct. 459, 465, 15 L.Ed.2d 43, 460, reiterated:
“* * * the guarantees of the Fourth Amendment, stands as a protection of quite different constitutional values-values reflecting the concern of our society for the right of each individual to be let alone. To recognize this is no more than to accord those values undiluted respect.”
The California courts have taken the position that a probationer enjoys only a limited expectation of traditional Fourth Amendment protection, and have endorsed the use of the warrantless search clause as a condition of probation. People v. Bremmer, (1973), 30 Cal.App.3d 1058, 106 Cal.Rptr. 797; People v. Mason, (1971), 5 Cal.3d 759, 97 Cal.Rptr. 302, 488 P.2d 630.
However, the Ninth Circuit Court of Appeals recently stated in United States v. Consuelo-Gonzalez, 521 F.2d 259, 265, (9th Cir. 1975), that “A probationer, like the parolee, has the right to enjoy a significant degree of privacy.” Further, that a defendant’s submission to warrantless searches “should not be the price of probation.” (Emphasis added.)
More recent state court decisions have adopted the position that warrantless search clauses as a condition of probation represent an undue infringement upon the probationer’s constitutional rights. State v. Page, (1976), 115 Ariz. 131, 564 P.2d 82; Tamez v. State, (Tex.Cr.App.1976), 534 S.W.2d 686, 692; People v. Peterson, (1975), 62 Mich.App. 258, 233 N.W.2d 250; State v. Gansz, (Fla.App.1974), 297 So.2d 614.
*209 In Tamez the Texas Court of Criminal Appeals stated:
“* * * [W]e conclude that the probationary condition in the instant case is too broad, too sweeping and infringes upon the probationer’s rights under the Fourth and Fourteenth Amendments to the United States Constitution * * *. The condition imposed would literally permit searches, without probable cause or even suspicion, of the probationer’s person, vehicle or home at any time, day or night, by any peace officer, which could not possibly serve the ends of probation. For example, an intimidating and harassing search to serve law enforcement ends totally unrelated to either his prior conviction or his rehabilitation is authorized by the probationary condition. A probationer, like a parolee, has the right to enjoy a significant degree of privacy.” (Emphasis added.) 534 S.W.2d 692.
In holding a similar probationary condition invalid in Gansz, the Florida Appellate Court reasoned.
“The fourth amendment puts a restraint on the arm of the government and prevents it from invading the sanctity of a man’s home or his private quarters except under safeguards calculated to prevent oppression and abuse of authority.” 297 So.2d 616.
Striking down a search clause imposed upon a probationer the Michigan Court of Appeals in Peterson, stated emphatically:
“Our research has uncovered many cases from other jurisdictions which sustained the same imposition of consent to warrantless, searches and seizures as were here imposed. However, the waiver of protection against unreasonable searches and seizures is so repugnant to the whole spirit of the Bill of Rights as to make it alien to the essence of our form of government.” (Emphasis added.) 233 N.W.2d 255.
In Page, the Arizona Supreme Court agreed with the defendant’s contention that because the search clause imposed upon her as a condition of probation gave any peace officer the authority to seize and search her person or property without a warrant at his unfettered whim, it held the condition overbroad and invalid. The court noted:
*210 “Although the record does not reflect that any search has yet been conducted * * * we nevertheless decide the issue presented because of the fact that defendant’s Fourth and Fourteenth Amendment rights have been and are being reduced by the Court’s existing provision.” 564 P.2d 83, Footnote 1.
A probationer does have a right to privacy. Tamez v. State, supra. In addition, the United States Supreme Court has recognized a right of personal privacy does exist under the Constitution. Griswold v. Connecticut, (1965), 381 U.S. 479, 486, 85 S.Ct. 1678, 14 L.Ed.2d 510.
Montana expressly recognized the right to privacy. It is found in its 1972 Constitution, Article II, Section 10:
“The right of individual privacy is essential to the well-being of a free society and shall not be infringed without the showing of a compelling state interest.”
Speaking on the importance of having this right incorporated into the 1972 Montana Constitution, the Convention’s Bill of Rights Committee stated. *211 area of privacy has decreased, decreased and decreased. * * * as a participating member of society, we all recognize that the state must come into our private lives at some point, but what it says is, don’t come into our private lives unless you have a good reason for being there. We feel that this, as a mandate to our government, would cause a complete reexamination and guarantee our individual citizens of Montana this very important right-the right to be let alone, and this has been called the most important right of them all.” Montana Constitutional Convention, Transcript of Proceedings, Vol. 7, 5179-5182 (1972).
*210 “* * * the right of privacy is a right that is not expressly stated in either the United States or the Montana Constitutions. It is our feeling on the Bill of Rights Committee that the times have changed sufficiently that this important right should now be recognized. * * * In our early history, of course, there was no need to expressly state that an individual should have a right of privacy. Certainly, back in 1776, 1789, when they developed our bill of rights, the search and seizure provisions were enough, when a man’s house was his castle and the state could not intrude upon this home without the procuring of a search warrant with probable cause being stated before a magistrate and a search warrant being issued. No other protection was necessary and this certainly was the greatest amount of protection that any free society had given its individuals. In that type of a society, of course, the neighbor was maybe three or four miles away. There was no real infringement upon the individual and his right of privacy. However, today we have observed an increasingly complex society and we know our
*211 Courts holding that a probationary condition allowing unlimited search and seizure by law enforcement officers as valid have generally justified their decisions on the rationale that a defendant waives Fourth Amendment protection by consenting to the terms of probation. See: People v. Mason, supra. The crucial issue regarding such a waiver of Fourth Amendment rights is whether a defendant’s consent to such terms and under such conditions can be characterized as free and voluntary, that is, free from any coercive influence.
A study of recent cases outlining the requirements of a consent search should begin with State v. LaFlamme, (1976), 170 Mont. 202, 551 P.2d 1011. The Court cited Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797, as controlling and restated the rule handed down in Channel v. United States, (9th Cir. 1960), 285 F.2d 217, 219.
“A search and seizure may be made without a search warrant if the individual freely and intelligently gives his unequivocal and specific consent to the search, uncontaminated by and duress or coercion, actual or implied. The Government has the burden of proving by clear and positive evidence that such consent was given.” 285 F.2d 219.
In Schneckloth v. Bustamonte, (1973), 412 U.S. 218, 228, 93 S.Ct. 2041, 2048, 36 L.Ed.2d 854, 863, the Court stated:
“* * * the Fourth and Fourteenth Amendments require that a consent not be coerced, by explicit or implicit means, by implied *212 threat or covert force. For, no matter how subtly the coercion were applied, the resulting ‘consent’ would be no more than a pretext for the unjustified police intrusion against which the Fourth Amendment is directed.” 412 U.S. 228, 93 S.Ct. 2048, 36 L.Ed.2d 863.
The common law has always recognized a man’s house as his castle, impregnable even to its own officers engaged in the execution of its commands. Warren and Brandeis, The Right to Privacy, 4 Harvard Law Review 192, 220 (1890). The dissent in United States v. Consuelo-Gonzalez, (9th Cir. 1975), 521 F.2d 259, 274, made this astute observation:
“Consent by the defendant, however is more likely to be nominal than real. A convicted defendant will often accept almost any alternative to imprisonment * * (Emphasis added.) 521 F.2d 274.
In People v. Peterson, (1975), 62 Mich. App. 258, 233 N.W.2d 250, 255, the court held that the blanket search and seizure provisions in the order of probation were invalid. The court stated:
“* * * But when the waiver is conditioned on the surrender of so hallowed a right, the so-called choice amounts to no choice at all. We hold the probationer’s signed acceptance thereof was in legal effect coerced and thus rendered nugatory.”
At this point we confront authorities theorizing that parole is an act of grace, acceptance of which entails the voluntary surrender of curtailment of constitutional rights. This rationalle is not particularly appealing. It makes constitutional rights dependent upon a kind of “contract” in which one side has all the bargaining power. A better doctrine is that the state may not attach unconstitutional conditions to the grant of state privileges, [probation].
A probationer faces a drastic choice. His alternative to giving up the constitutional right against unreasonable search and seizure is imprisonment. Choosing between the lesser of the two evils does not amount to a real choice, however, it is therefore coercive.
A court’s allowing a defendant to return to his own abode implies that he does not pose an immediate threat to society and is sufficiently reliable to not require daily, unlimited supervision. A pro *213 bation condition allowing warrantless search “at any time of day or night” condones such arbitrary supervision.
Montana’s statutes express the dominant purpose of rehabilitation through sentences. Under section 95-2206, R.C.M.1947, a court upon sentencing may impose “any reasonable restrictions”, including:
“ * * *
“* * *
“(iii)conditions for probation;
“(v) any other reasonable conditions considered necessary for rehabilitation or for the protection of society * *
A wise judge once said and it applies here, that such searches measure the effectiveness of rehabilitation in the same manner that one fells a tree to measure its age. It is high time that we recognize that a person must have the freedom to be responsible, if he is to become responsibly free.
I conclude with the admonition that in addition to the brief recital here, there are many more problems related to those mentioned herein that necessarily need consideration before Montana can assume a respectable position in the matter. We must also consider the rights of those who reside with a probationer — his wife, children, mother and others. These problems do not go away by just ignoring them.
I conclude that the judgment of the District Court be reversed and the search clause, at least in its present form and application be rendered void and unenforceable for the reasons given here.