*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v

JOSEPH ROBERT BENSCH,

        Defendant-Appellee.

FOR PUBLICATION
April 30, 2019

No. 341585
Lenawee Circuit Court
LC No. 17-005792-AR

Before: TUKEL, P.J., and BECKERING and SHAPIRO, JJ.

TUKEL, J. (*dissenting*).

Is there any circumstance under which a criminal defendant may veto a sentence which the trial judge intends to impose and demand a sentence more to the defendant's liking? Reading the Michigan Constitution and statutes, one would certainly think not. "[T]he ultimate authority to provide for penalties for criminal offenses is constitutionally vested in the Legislature." *People v Hegwood*, 465 Mich 432, 436; 636 NW2d 127 (2001), citing Const 1963, art 4, § 45. "The authority to impose sentences and to administer the sentencing statutes enacted by the Legislature lies with the judiciary." *Id*. at 436-437, citing MCL 769.1(1). The majority, however, reaffirms the rule first enunciated in *People v Peterson*, 62 Mich App 258, 265; 233 NW2d 250 (1975), that "[p]robation is a matter of grace and rejectable, we think, at the option of the probationer." Because I believe that *Peterson* was incorrectly decided and that the justifications given by the majority for adhering to it are inadequate, I respectfully dissent.

## I. AUTHORITY TO IMPOSE A SENTENCE OF PROBATION

### A. THIS COURT'S DECISION IN *PETERSON*

The precise question presented here is whether a defendant whom the trial court determines should be sentenced to probation can "veto" the imposition of probation and instead

opt for a custodial sentence.[1]  Such was the holding in *Peterson*, but the underlying rationale for the decision is at best unclear; the Court provided no analysis beyond the quoted sentence, and that sentence appeared to be a mere supposition ("we think"), unsupported by any authority.[2]

Despite this lack of authority, the majority states that "[t]he prosecution does not identify any difficulties that have occurred as a result of defendants being able to refuse probation. Indeed, as a practical matter, we think it is safe to say that the overwhelming majority of criminal defendants gladly welcome probation over incarceration and that the issue rarely arises."  While

---

[1] There does not seem to be a name for the doctrine at issue.  For ease of reference, this dissent refers to the proposition that a criminal defendant has the authority to reject a probationary sentence which the trial court intends to impose as the "probation veto doctrine" or "veto doctrine."  The majority's claim that this terminology is somehow "incomplete" because it supposedly suggests that a defendant can opt out of *all* punishment is simply not correct, as this dissent's framing of the issue makes clear.  Instead, this doctrine means what it says:  a defendant can unilaterally veto or decline *probation*.  Neither this phrase nor this opinion suggests that such a defendant could decline *other* forms of punishment, and in fact the entire point of the case is that it permits a defendant to choose another form of punishment in lieu of probation.

While a defendant's choice to elect imprisonment over probation may seem counter-intuitive, the interplay of Michigan law and the facts of a particular case may make it quite rational from a defendant's perspective.  In Michigan, as the majority notes, "concurrent sentencing is the norm," and "[a] consecutive sentence may be imposed only if specifically authorized by statute." *People v Brown*, 220 Mich App 680, 682; 560 NW2d 80 (1996) (citation omitted).  Thus, for example, if a defendant was being sentenced on two convictions, and if the maximum possible imprisonment for each was one year, such a defendant may opt for two concurrent terms of imprisonment, assuming no concurrent-sentencing exception existed, instead of one term of imprisonment and one lengthier term of probation.  In the concurrent-sentencing scenario, the defendant would be "done" with his punishment at the end of one year at the latest; in the other scenario, the defendant may have served a year in jail but still might be subject to perceived onerous terms of probation for many years afterward.  Thus, the punishment in the latter scenario would be more severe to that defendant since the normal benefit of probation, avoiding jail time, would not be realized.  Indeed, the statute at issue here authorizes consecutive sentencing for a second-offense drunk driving conviction, as in this case, and in fact requires that at least some of the imposed sentence to be served consecutively.  See MCL 257.625(9)(b)(*i*) (authorizing "[i]mprisonment for not less than 5 days or more than 1 year," and "[n]ot less than 48 hours of the term of imprisonment imposed . . . must be served consecutively").

[2] The partial dissent in *Peterson* also said, "As recognized by the majority, probation is 'rejectable'; that is, optional and essentially voluntary. . . .  A probationer or parolee has given his consent in return for more lenient treatment." *Peterson*, 62 Mich App at 271 (DANHOF, J., concurring and dissenting in part).  JUDGE DANHOF provided no further authority for that view than did the *Peterson* majority, instead simply assuming that a defendant had given consent and that by withholding consent, a defendant could veto the term of probation.

it is in fact likely that most defendants do prefer probation to a sentence of incarceration, whether or not the prosecution has identified problems which have arisen as a result of the veto doctrine is not relevant to whether it is a proper interpretation of the law. The correct resolution turns on Legislative intent, which is itself based on statutory language which expresses the Legislature's policy determinations, and we do not consider or weigh those policy pronouncements. See *Robinson v Detroit*, 462 Mich 439, 474; 613 NW2d 307 (2000) ("[A] Court exceeds the limit of its constitutional authority when it substitutes its policy choice for that of the Legislature.") (CORRIGAN, J., concurring).

In addition, the other cases from this Court stating that a defendant may veto probation, which the majority cites, also contain no discussion of the source of the doctrine, other than that two of them cited to JUDGE DANHOF's partial dissent in *Peterson*, which itself was deficient for reasons already stated. See *People v Oswald*, 208 Mich App 444, 446; 528 NW2d 782 (1995) (stating in dictum and without citing any authority, "Indeed, had defendant found the term of probation to be overly onerous, he could have declined the grant of probation, notified the court that he would not abide by the terms of probation, and submitted himself for sentencing directly under the [statute of conviction] . . . ."); *People v Hellenthal*, 186 Mich App 484, 486; 465 NW2d 329 (1990) (quoting from the partial dissent in *Peterson*); *People v Richards*, 76 Mich App 695, 699; 256 NW2d 793 (1977) (adopting without discussion JUDGE DANHOF's view in *Peterson*).[3]

## B. STATUTORY AUTHORITY REGARDING PROBATION

However, the availability of probation as a sentencing option for a particular offense is purely a legislative determination. As our Supreme Court has noted, "the source of the trial court's probation authority [is] the Legislature." *People v McLeod*, 407 Mich 632, 660; 288 NW2d 909 (1980), citing *People v Davis*, 392 Mich 221, 226; 220 NW2d 452 (1974); see also *People v Marks*, 340 Mich 495, 498; 65 NW2d 698 (1954) (stating that "[t]he authority of the court" to impose a probationary sentence "must be found in the statute"). And it has long been clear in Michigan that the decision to impose a sentence of probation "rests in the sound discretion of the trial court." *McLeod*, 407 Mich at 660; *Marks*, 340 Mich at 499. It is of course a familiar tenet of statutory construction that we are to effectuate the intent of the Legislature, as set forth in the statutory language used. See, e.g., *People v Pinkney*, 501 Mich 259, 268; 912 NW2d 535 (2018). "In doing so, we examine the statute as a whole, reading individual words and phrases in the context of the entire legislative scheme. When a statute's language is unambiguous, . . . the statute must be enforced as written. No further judicial construction is required or permitted." *Id.* (quotation marks and citations omitted).

---

[3] In its footnote 13, the majority states that "the dissent ignores that this Court has relied on the case to resolve challenges to conditions of probation by reasoning that the defendant *chose* probation and therefore cannot complain of its conditions." However, the majority's point is circular—reliance on a defendant's *choice* of probation is only material if a defendant has a right to such a choice. That is the question presented here, so its correctness cannot simply be assumed.

### 1. MCL 771.1—VESTING POWER WITH "THE COURT"

The relevant statutory language is provided by MCL 771.1(1) and states:

> In all prosecutions for felonies, misdemeanors, or ordinance violations other than murder, treason, criminal sexual conduct in the first or third degree, armed robbery, or major controlled substance offenses, if the defendant has been found guilty upon verdict or plea and the court determines that the defendant is not likely again to engage in an offensive or criminal course of conduct and that the public good does not require that the defendant suffer the penalty imposed by law, the court may place the defendant on probation under the charge and supervision of a probation officer.

It is thus readily apparent that by its plain terms, MCL 771.1(1) places the decision of whether to impose a term of probation on the sentencing court, without reserving to a defendant any option of vetoing such a sentence. That section provides that, except in regard to certain offenses which the Legislature has determined are ineligible for probation, and so long as other conditions are met, "*the court* may place the defendant on probation[.]" (Emphasis added.)

As MCL 771.1(1) is the basis of a court's authority to impose probation, it is noteworthy that the statute contains no language providing that a defendant must consent to, and therefore may veto, such a sentence. Nor do any of the other statutory provisions dealing with the authority to impose a term of probation contain such consent or veto provisions. See, e.g., MCL 771.2(5) ("The court shall, by order to be entered in the case as the court directs by general rule or in each case, fix and determine the period and conditions of probation."); MCL 771.2a(1)-(3) (providing that "the court" may impose a term of probation of up to 5 years for various offenses); MCL 771.3(2) (providing for terms which "the court may require the probationer to do," as conditions of probation). That is of course in accordance with the normal and expected functioning of the criminal justice system, under which "[a] judge of a court having jurisdiction may pronounce judgment against and pass sentence upon a person convicted of an offense in that court. The sentence shall not exceed the sentence prescribed by law." MCL 769.1(1). By ratifying the principle that a defendant may overrule a sentencing court's determination of what "the public good" requires in regard to the imposition of probation, MCL 771.1(1), the majority transfers one aspect of sentencing from courts, where the Legislature has reposed sentencing authority, to criminal defendants. As an abstract principle, it is highly dubious that the Legislature intended to cede the determination of what constitutes "the public good" for sentencing purposes to the defendant who was convicted of a particular offense. That premise is confirmed by the express language of the statute, which makes clear the Legislature did not do so, as it enacted language which says that if "the court" makes a particular determination about the public good, then "the court" may impose a term of probation.

### 2. MCL 771.4—"MATTER OF GRACE"

The provision on which the majority expressly relies is MCL 771.4. That section provides in relevant part:

It is the intent of the legislature that the granting of probation is a matter of grace conferring no vested right to its continuance. If during the probation period the sentencing court determines that the probationer is likely again to engage in an offensive or criminal course of conduct or that the public good requires revocation of probation, the court may revoke probation.

*Peterson* did not cite MCL 771.4 but referred to probation being "a matter of grace," so it may well have had the section in mind. In any event, reliance on MCL 771.4 to support the validity of the probation veto doctrine is misplaced.

To begin with, the majority quotes only a portion of the statute, citing it for the proposition that "probation is a matter of grace." However, a proper reading of the statute shows that it is MCL 771.1 through MCL 771.3 that commit to "the court" the decision of whether to sentence a defendant to probation. The statute then goes on to provide the circumstances under which a court that previously has sentenced a defendant to a term of probation may cancel or revoke that probation. MCL 771.4 addresses only that decision to cancel probation—not to grant it in the first instance—and thus has no applicability regarding whether a defendant may veto a sentencing court's initial decision to impose a term of probation.[4] Rather, MCL 771.4 provides that "the granting of probation is a matter of grace conferring no vested right to its continuance," such that, if the court determines either that the probationer is likely to again engage in criminal conduct "or that the public good requires revocation of probation, the court may revoke probation." Thus, although MCL 771.4 does not address the initial decision to impose probation, in the situation to which it does apply, revocation, the "matter of grace" language actually means the opposite of what the majority says it means. In its proper context, the matter of grace language means that a defendant has no right to demand whatever is at issue, which in the case of MCL 771.4 is the continuation of probation, and thus the decision of whether or not to terminate probation is committed solely to the discretion of the trial court.

But even if the majority is correct that the initial decision of whether to impose probation is controlled by the "matter of grace" language of MCL 771.4, it would simply mean that defendant has no involvement in the decision of whether or not to impose probation. That is because (1) a defendant has no right to such a sentence and therefore cannot expect it, demand it, or approve or disapprove it; and (2) the decision to impose a sentence of probation resides solely with the trial court. In other words, the "matter of grace" language merely is another way of saying that the granting of probation is a purely *discretionary* decision by the trial court, albeit in more archaic language owing to its 1927 roots.

---

[4] The structure of the statute supports this reading as well. The first three sections (MCL 771.1 through MCL 771.3) define the circumstances and procedure under which a court may impose probation, the first step in a sentencing determination leading to probation. MCL 771.4, the fourth section, then defines the circumstances under which a court may undo its previous actions. Thus, the structure of these sections corresponds chronologically to how a probationary sentence works in practice.

The phrase "a matter of grace" was first used in a probation statute in 1927 PA 246, Chapter XI, § 4, which provided in relevant part:

> It is the intent of the legislature that the granting of probation to one convicted shall be a *matter of grace conferring no vested right to its continuance*, if, during the period of probation it shall appear to the satisfaction of the sentencing court that the probationer is likely again to engage in an offensive or criminal course of conduct, or that the public good requires revocation or termination of probation previously granted. *All probation orders, therefore, shall be revocable or terminable* in any manner which the court which imposed probation shall deem applicable, either for any violation, or attempted violation of any condition of probation, or for any other type of antisocial conduct or action on the part of the probationer. [Emphasis added.]

As is the case with the current version of the statute, the "matter of grace" language related not to the initial decision to impose probation but rather to its revocation. But even beyond that, in 1927, when the "matter of grace" language was adopted, the term was understood generally to mean simply the opposite of being a matter of right. As noted, our job in construing a statute is to effectuate the intent of the Legislature, as set forth in the statutory language used. In doing so, we must use the understanding of a term as it was known by the Legislature which enacted the statute. See *People v Bolling*, 140 Mich App 606, 611-612; 364 NW2d 759 (1985) (construing the word "timber" as it was understood by the Legislature in 1867, when the statute at issue was enacted). Moreover, even though the "matter of grace" language has been reenacted in subsequent legislation, it is nevertheless the language of the 1927 act which is controlling because "[t]he provisions of any law or statute which is re-enacted, amended, or revised, so far as they are the same as those of prior laws, shall be construed as a continuation of such laws and not as new enactments." MCL 8.3u.

In 1927, when the "matter of grace" language was first adopted, our courts uniformly interpreted the phrase to mean that something was *not* a matter of right but rather of judicial discretion. See, e.g., *Worsham v McCall*, 259 Mich 630, 632; 244 NW 183 (1932) ("The remedy of specific performance is a matter of grace rather than of right."); *Harmon v Muirhead*, 247 Mich 614, 615; 226 NW 713 (1929) ("Specific performance is a matter of grace, not of right."); *Stuart v Gonyea*, 246 Mich 109, 112; 224 NW 386 (1929) ("It is only a matter of grace and not a matter of right."); see also Black's Law Dictionary, 3d ed. (1933) (defining "grace" as "commonly used in contradistinction to 'right.' "). And that point accords exactly with what our Supreme Court has long held—as the majority notes—that the decision to impose a sentence of probation "rests in the sound discretion of the trial court." *McLeod*, 407 Mich at 660; *Marks*, 340 Mich at 499. In other words, as used in the probation statute, the term "a matter of grace" in 1927 meant the same thing that "sound discretion of the court" means today.

Thus, the majority's position that a trial court's "discretion" nevertheless is dependent on a defendant's approval and therefore is subject to a defendant's veto is untenable; none of the cases from our Supreme Court so much as hints that a trial court's discretionary authority over the decision to impose probation is so limited. Indeed, if that were the case, the use of the term "discretion" to describe the trial court's authority would be self-contradictory, as such conditional discretion would not constitute discretion at all. See *Sparks v Sparks*, 440 Mich 141,

149 n 7; 485 NW2d 893 (1992), quoting *Langnes v Green*, 282 US 531, 541; 51 S Ct 243; 75 L Ed 520 (1931) (" 'The term "discretion" denotes the absence of a hard and fast rule. When invoked as a guide to judicial action it means a sound discretion, that is to say, a discretion exercised not arbitrarily or willfully, but with regard to what is right and equitable under the circumstances and the law, *and directed by the reason and conscience of the judge to a just result.*' ") (ellipses omitted, emphasis added). The veto doctrine necessarily impinges on a judge's range of options and, by affording to a defendant a say in the decision to impose probation, mandates that the ultimate decision involves considerations other than those of the judge, as well as approval by someone other than the judge. As such, the veto doctrine transforms a judge's "discretion" into something that falls well short of "the reason and conscience of the judge" leading "to a just result." *Langnes*, 282 US at 541. The veto doctrine, therefore, contravenes the long-settled principle that the decision of whether to impose probation is committed to the trial court, whether one uses the modern term "discretion" or the more old-fashioned phrase "matter of grace" to describe that authority, because in this context the two terms mean the same thing.[5]

## II. STARE DECISIS

The majority correctly notes that we are not required to follow *Peterson* because it was issued prior to November 1, 1990. MCR 7.215(B)(4). The majority, citing *Woodring v Phoenix Ins Co*, ___ Mich App ___, ___; ___ NW2d ___ (2018) (Docket No. 324128); slip op at 2, notes that such opinions are " 'nonetheless considered to be precedent and entitled to significantly greater deference than are unpublished cases.' " The majority also cites to MCR 7.215(C)(2) in pointing out that " '[a] published opinion of the Court of Appeals has precedential effect under the rule of stare decisis.' "

Stare decisis is generally " 'the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.' " *Pohutski v City of Allen Park*, 465 Mich 675, 693; 641 NW2d 219 (2002) (citations omitted). Before overruling a prior decision, a court must be convinced " 'not merely that the case was wrongly decided, but also that less injury will result from overruling than from following it.' " *Id*. (citation omitted).

At the same time, stare decisis is a principle of policy, not an inexorable command. *Id*. As United States Supreme Court Justice Louis Brandeis put it, "Stare decisis is usually the wise policy, because in most matters it is more important that the applicable rule of law be settled than

---

[5] On appeal, the prosecution argues three other reasons justifying the overruling of *Peterson*: (1) probation as contract theory is no longer viable; (2) probation as "a matter of grace" is based on an outmoded view; and (3) probation no longer is viewed as a tool of rehabilitation. However, in light of the authority to impose probation being purely legislative, any analysis of the validity of the probation veto doctrine properly begins and ends with statutory construction; thus, a court properly ought not consider these policy concerns the prosecution raises. Moreover, in determining whether to adhere to the rule of *Peterson*, it makes no sense to rely on rationales not provided by *Peterson* itself.

that it be settled right." *Burnet v Coronado Oil & Gas Co*, 285 US 393, 406; 52 S Ct 443; 76 L Ed 815 (1931) (Brandeis, J., dissenting), majority opinion overruled in part on other grounds by *Helvering v Mountain Producers Corp*, 303 US 376, 378; 58 S Ct 623; 82 L Ed 907 (1938). Nevertheless, "stare decisis should not be applied mechanically to prevent a court from overruling erroneous decisions regarding the meaning of a statute." *Robinson*, 462 Mich at 463. In *Robinson*, our Supreme Court set forth four factors that courts must consider before overruling a prior decision: (1) whether the earlier case was wrongly decided, (2) whether the decision defies "practical workability," (3) whether reliance interests would work an undue hardship, and (4) whether changes in the law or facts no longer justify the questioned decision. *Id*. at 464.

In considering the reliance interest, courts consider "whether the previous decision has become so embedded, so accepted, so fundamental, to everyone's expectations that to change it would produce not just readjustments, but practical real-world dislocations." *Id*. at 466. However, our Supreme Court also has noted that

> it is well to recall in discussing reliance, when dealing with an area of the law that is statutory . . . , that it is to the words of the statute itself that a citizen first looks for guidance in directing his actions. This is the essence of the rule of law: to know in advance what the rules of society are. Thus, if the words of the statute are clear, the actor should be able to expect, that is, rely, that they will be carried out by all in society, including the courts. In fact, should a court confound those legitimate citizen expectations by misreading or misconstruing a statute, it is that court itself that has disrupted the reliance interest. When that happens, a subsequent court, rather than holding to the distorted reading because of the doctrine of stare decisis, should overrule the earlier court's misconstruction. The reason for this is that the court in distorting the statute was engaged in a form of judicial usurpation that runs counter to the bedrock principle of American constitutionalism, i.e., that the lawmaking power is reposed in the people as reflected in the work of the Legislature, and, absent a constitutional violation, the courts have no legitimacy in overruling or nullifying the people's representatives. Moreover, not only does such a compromising by a court of the citizen's ability to rely on a statute have no constitutional warrant, it can gain no higher pedigree as later courts repeat the error. [*Id.* at 467-468; accord *Pohutski*, 465 Mich at 694-695.]

In the criminal law context, reliance interests often will carry little weight in determining whether to overrule an incorrectly decided precedent. This is so because " '[T]o have reliance the knowledge must be of the sort that causes a person or entity to attempt to conform his conduct to a certain norm before the triggering event.' " *Robinson*, 462 Mich at 467. However, "[t]he nature of a criminal act defies any argument that offenders attempt to conform their crimes—which by definition violate societal and statutory norms—to a legal test established [by previous judicial decisions]." *People v Gardner*, 482 Mich 41, 62; 753 NW2d 78 (2008). Moreover, to the extent such earlier judicial decisions "implicate reliance interests, such interests weigh in favor of overruling them. Michigan citizens and prosecutors should be able to read the clear words of the statutes and 'expect that they will be carried out by all in society, including the courts.' " *Id.*, quoting *Robinson*, 462 Mich at 463 (ellipses omitted).

In sum, "no person could conceivably have relied on [the veto doctrine as enunciated in *Peterson*] to his or her detriment. That is, we cannot conceive that anyone has committed a [drunk-driving offense] on the basis that, under [*Peterson*] he or she could only be" sentenced to probation with his consent. *People v Ream*, 481 Mich 223, 240-241, 750 NW2d 536 (2008) (bracketed material added to correspond with the facts of this case).

Here, it is clear that *Peterson* should be overruled. For the reasons already stated, the doctrine it enunciated is contrary to the clear statutory directive under which the Legislature has given the authority to the courts to impose a probationary sentence and nowhere has it afforded a defendant the power to refuse such a sentence. Moreover, for the reasons stated by our Supreme Court in *Gardner* and *Ream*, there could not have been any reliance interest by defendant in committing his second drunk-driving offense, such that he would have had an expectation that he could reject probation; and even if defendant had had such a reliance interest, it is one which is illegitimate, given his violation of the criminal law, and thus should not be further endorsed by the judiciary.

For these reasons, I would hold that *Peterson* is incorrect to the extent that its permits a defendant to veto a sentencing court's decision to impose a term of probation. I would vacate the decision of the circuit court and remand to the trial court for resentencing.

/s/ Jonathan Tukel