PEOPLE v McLEOD

Docket No. 60368. Argued February 1, 1979 (Calendar No. 5).—Decided March 4, 1980.

Joseph McLeod was charged with arson and found guilty but mentally ill in a non-jury trial in the Recorder's Court of Detroit, Susan D. Borman, J. The trial court, on its own motion, conducted hearings on the treatment which the Department of Corrections and the Department of Mental Health would provide for the defendant under the statutory sentencing provisions for guilty but mentally ill persons. The court decided that the defendant needed continued care but that the Department of Corrections would not provide the defendant the treat-

REFERENCES FOR POINTS IN HEADNOTES

[1, 5] 21 Am Jur 2d, Criminal Law § 533 *et seq.*
[2, 3] 21 Am Jur 2d, Criminal Law § 527 *et seq.*
[3] 16 Am Jur 2d, Constitutional Law § 174 *et seq.*
[4] 16 Am Jur 2d, Constitutional Law § 212 *et seq.*
[5] 21 Am Jur 2d, Criminal Law § 527 *et seq.*
[6] 21 Am Jur 2d, Criminal Law § 610 *et seq.*
[7] 21 Am Jur 2d, Criminal Law § 62 *et seq.*
[8] 21 Am Jur 2d, Criminal Law § 72.
[9] 16A Am Jur 2d, Constitutional Law § 804 *et seq.*
   21 Am Jur 2d, Criminal Law § 220 *et seq.*
[10, 12] 16A Am Jur 2d, Constitutional Law § 812 *et seq.*
   21 Am Jur 2d, Criminal Law § 220 *et seq.*
[11, 13, 17] 21 Am Jur 2d, Criminal Law § 562 *et seq.*
[12] 21 Am Jur 2d, Criminal Law § 564.
[14] 16A Am Jur 2d, Constitutional Law § 735 *et seq.*
   21 Am Jur 2d, Criminal Law § 582.
[15] 16A Am Jur 2d, Constitutional Law § 735 *et seq.*
   21 Am Jur 2d, Criminal Law § 533 *et seq.*
[16] 21 Am Jur 2d, Criminal Law § 229 *et seq.*
[17] 21 Am Jur 2d, Criminal Law § 229 *et seq.*
[18] 21 Am Jur 2d, Criminal Law § 533 *et seq.*
[19] 21 Am Jur 2d, Criminal Law § 56 *et seq.*
   21 Am Jur 2d, Criminal Law § 527 *et seq.*
[20] 21 Am Jur 2d, Criminal Law § 533 *et seq.*
[21] 21 Am Jur 2d, Criminal Law § 533 *et seq.*
[22] 21 Am Jur 2d, Criminal Law §§ 68, 527 *et seq., 533 et seq.*

ment required by the statute, and further decided that the conditions within the Department of Corrections posed an immediate threat of irreparable harm to the defendant. The court found that probation conditioned on continued inpatient treatment by the Department of Mental Health was not feasible because the department's policy would require release of the defendant as soon as the administration of drugs masked the overt symptoms of his mental illness. The court concluded that the statutory provision for a minimum five-year term of probation for persons found guilty but mentally ill violated the constitutional guarantees of equal protection of the laws, and that she could not sentence the defendant under the statute because compliance with its provisions for treatment was "impossible". The court set aside the judgment of guilty but mentally ill, and ordered a new trial. The Court of Appeals, Bashara, P.J., and Quinn and Beasley, JJ., reversed the order of the trial court, and remanded the case for sentencing (Docket No. 30538). Defendant appeals. In opinions by Justices Ryan, Levin, and Williams, the Supreme Court *held:*

1. The trial court erred in finding the statute unconstitutional.

2. The trial judge acted properly in conducting hearings to determine what psychiatric treatment would be provided McLeod under the various statutory alternatives.

3. An inquiry to determine whether appropriate treatment will be provided cannot be conducted without making the departments responsible for treatment parties to the inquiry.

Justice Ryan, joined by Chief Justice Coleman and Justice Fitzgerald, wrote:

1. Matters relating to the post-sentence treatment of the defendant are prematurely raised in this case. The reasons asserted by the trial court for its finding of unconstitutionality all rely on speculation that the Department of Corrections or the Department of Mental Health will not follow the statute. While events may prove this surmise to be correct, the conclusion that compliance with the statute is "impossible" is inaccurate. The statute grants certain defendants a right to such treatment as is psychiatrically indicated, but the trial court erred in attempting, before sentencing, to determine whether the treatment would be provided, and did not afford the departments a reasonable opportunity to comply with the statutory mandate.

2. The sentencing proceedings in this case did not provide the Department of Corrections and the Department of Mental Health an opportunity to develop a factual record. In order for

the trial court to have properly made the findings that it did concerning the availability of treatment for the defendant, it should have had the departments before it as parties to a legal proceeding, represented by counsel, and should have afforded them a full and fair opportunity to develop a factual record on what treatment the defendant needed, whether it would be provided, and the reasons for any failure to provide it. Moreover, until the defendant undergoes further evaluation in the Department of Corrections, no determination can be made of what treatment is psychiatrically indicated for his mental illness or retardation. Thus, it is logically impossible to conclude that the required care will not be provided.

3. Even if the trial court could have made a proper determination that the defendant would not receive the required treatment, it does not follow that the statute is, for that reason, unconstitutional. Noncompliance by the Department of Corrections with the statutory mandate for evaluation and treatment cannot render unconstitutional an otherwise constitutional statute. On this record the sentencing court was an inappropriate forum to determine that the sentencing provisions of the statute could not and would not be implemented. The trial court's factual finding that the conditions at the Department of Corrections facilities posed a threat of immediate and irreparable injury to the defendant was made on an inadequate factual record. Finally, because no full evidentiary record was properly developed below, it has not been established that the defendant will not be afforded the treatment to which he has a statutory right nor that the operation of the statute violates the Eighth Amendment ban against cruel and unusual punishment.

4. Courts have a duty to presume the constitutionality of a statute and to construe it as being constitutional unless the contrary clearly appears. It is evident from a reading of the probation provision, in the context of the entire statute, that the mental illness of the defendants sentenced under it is the basis for the specific statutory directive for a five-year minimum period of probation. The provision does not explicitly require an inquiry into a defendant's mental health at the time of sentencing, but it obviously contemplates such an inquiry and implicitly requires one. A judge who places a defendant on probation under the statute must make treatment a condition of probation upon the recommendation of the Center for Forensic Psychiatry. Practically speaking, the sentencing court could not determine whether treatment need be a condition of probation until after it has considered all relevant factors, including the defendant's present mental health, and the Center for

Forensic Psychiatry has had an opportunity to evaluate the defendant's mental health. Consequently, the statute is construed to require a sentencing court to obtain, prior to sentencing, a report from the Center for Forensic Psychiatry evaluating the present mental health of a defendant found guilty but mentally ill.

5. The defendant argues that guilty but mentally ill defendants are entitled by due process requirements to a hearing on the issue of their present mental health. He relies on a case which held that a person who had been found not guilty by reason of insanity could not be committed automatically to the Department of Mental Health. However, defendants found to be guilty but mentally ill are in a wholly different position than defendants found not guilty by reason of insanity. The former group of defendants have been found beyond a reasonable doubt to have been guilty of an offense, and mentally ill at the time of its commission, but not insane at the time. They no longer have a right to unfettered liberty. They have been convicted of a crime. Their only interest is in obtaining a term of probation similar to other persons convicted of the same crime.

6. The general approach of the Supreme Court of the United States for testing challenged state procedures under a due process claim requires a balancing of the private interest that is affected by the official action, the state's interest in the procedures it has adopted, and how well the procedures protect against arbitrariness in the making of the official decision. The private interest affected here, probation under the statute in lieu of sentencing, is purely a matter of grace, not of right; it rests in the sound discretion of the trial court. The Court is not evaluating a restriction on the defendant's fundamental right to liberty, but a restriction on the grant of an interest that is legislatively created. The defendant's interest in the sentencing alternative of probation will be protected adequately if the sentencing court is required to obtain a report on the defendant's present mental health prior to sentencing and provides a procedure for review to allow shortening or discontinuing the period of probation if the reasons for the five-year period no longer obtain. Such procedures strike a constitutional balance between the defendant's interest in a period of probation of less than five years and the state's interest in assuring that mentally ill criminals are provided supervised treatment for their mental illness for a time sufficient to determine that their mental health is restored.

7. The apparently mandatory five-year period of probation is

actually a qualified command to a sentencing court, which permits it to shorten the presumptive five-year period of probation if a forensic psychiatric report before sentencing or during probation indicates that a shorter period would be appropriate. Periodic review of the continuing need for treatment is statutorily required. Furthermore, the statute clearly authorizes a sentencing court to discontinue probation on the motion of the defendant when there is no further need for treatment. These provisions afford defendants who are placed on probation under the statute the required due process protections.

8. Neither a suspect class nor a fundamental right is involved in the statutory classification of guilty persons who are mentally ill as opposed to guilty persons who are not. Therefore, the classification will be upheld in the face of an equal protection challenge under the Federal and state Constitutions if it rationally furthers the object of the legislation. Equal protection does not require that all persons be dealt with identically, but it does require that a distinction made have some relevance to the purpose for which the classification is made. The Legislature's object in creating the verdict of guilty but mentally ill was to assure supervised treatment and care for persons convicted who are found to be suffering from mental illness, in the humane hope of restoring their mental health and possibly thereby deterring future criminal conduct on their part. The probationary terms for such persons are for a rebuttable five-year period under the continuing supervision of the sentencing court; the probation could be shortened or discontinued if the need for treatment no longer obtained. The statutory classification rationally furthers the legislative objective. Finally, this statute cannot be found to have created an arbitrary classification because the mandatory treatment would not be provided, and the sentencing court was an inappropriate forum to decide this question. There is no violation of equal protection in the probation provision of the statute.

Justice Levin, joined by Justice Kavanagh, concurring in affirmance, agreed generally with Justice Ryan's analysis of the rights granted and the procedures required by the statute creating the verdict of guilty but mentally ill, and with the conclusion that the trial court erred in finding the statute unconstitutional. He wrote separately that the trial court acted properly in conducting hearings to determine what psychiatric treatment would be provided McLeod under the various alternatives available in sentencing an offender found guilty but mentally ill.

1. The obligation to sentence carries with it the responsibility

to be informed regarding the conditions under which the sentence imposed will be served and the efficacy of the sentence in securing the interests of society and of the individual defendant, and to avoid imposition of a sentence violative of the defendant's statutory or constitutional rights. The sentencing judge has a responsibility to the offender as well as to society at large and should not impose a sentence based upon erroneous assumptions about the available resources for treatment, and whether and how they will be applied. The Court should not suggest that a trial court may not openly and on an evidentiary record, rather than by informal *ex parte* discussions, inquire whether the consequences and conditions attending particular sentencing alternatives render those sentences appropriate and lawful for an individual offender. That is what the trial judge did in this case. Insofar as she concluded that she could not commit McLeod to the custody of the Department of Corrections because the statutory promise of further evaluation and indicated treatment would not be fulfilled, she acted properly.

2. Although post-commitment procedures are normally the appropriate means of seeking to vindicate rights denied by conditions of confinement for those incarcerated, McLeod and others found guilty but mentally ill should not be relegated to such a slow and unsure remedy for a wrong which could be avoided by presentence inquiry. The Court should not hold in effect that a sentencing judge is obliged to impose a sentence that can be shown to be violative of a defendant's statutory or constitutional rights. Clearly it is as much the judge's duty to protect the defendant's statutory and constitutional rights as it is to impose sentence. If a sentence is violative of the defendant's statutory or constitutional rights, it cannot lawfully be imposed.

3. A presentence inquiry can be conducted without making the Department of Corrections or the Department of Mental Health a party to the cause. The prosecuting attorney in commencing a criminal prosecution represents the people and can adequately protect their interest. Although it might be desirable for a trial court to have before it the departments charged with the responsibility for administering the statutory mandates, that cannot properly be made a *sine qua non* to relief unless the Court identifies or provides a means whereby a sentencing judge or a defendant can readily bring them before the trial court. Otherwise, this requirement would erect an artificial procedural barrier to effective protection of statutory and constitutional rights. In this case, persons in the employ of the Department of Corrections and the Department of Mental

Health testified. If the prosecuting attorney wished to offer additional testimony he could have done so either by deposition or testimony in court. The Court could amend the court rules to require notice to the Department of Corrections and the Department of Mental Health and an opportunity to be heard before a decision is made, or could even require a defendant to join those departments as parties and identify or provide a means by which this could be done. What the Court cannot properly do is relegate persons who have substantial claims to a process that it should know will not provide effective relief. Persons asserting that they face irreparable injury can properly expect the Court to provide a meaningful remedy. A post-sentence procedure which requires a defendant to encounter predictable noncompliance with statutory and constitutional requirements for such time as may provide the authorities with a reasonable opportunity to comply with the statute, and, when that indeterminate time has elapsed, to obtain counsel, to commence a civil action, and to obtain a hearing and await appellate review is devoid of meaning.

4. Nor is it true that it is "logically impossible" to conclude that the required care will not be provided until a defendant sentenced as guilty but mentally ill undergoes further evaluation. A presentence hearing upon the ability of the Department of Corrections to furnish indicated treatment should be required in every case where the defendant requests such an inquiry and the judge does not rule out imprisonment as a sentencing alternative. Guilty but mentally ill defendants should not be sentenced to prison unless it affirmatively appears that the statutory right to treatment will be implemented. Such a requirement would pose certain practical difficulties, but they are not insurmountable. The number of "guilty but mentally ill" verdicts returned is not overwhelming and the presentence hearings would not be likely to be time-consuming, especially where the issue is so narrowly defined. The Court could, if it proved necessary, develop special procedures to expedite resolution of these cases.

5. In this case the sentencing judge heard testimony establishing that if McLeod were committed to the custody of the Department of Corrections as guilty but mentally ill he would probably not undergo further evaluation and be given the indicated treatment, unless he manifested symptoms that attracted attention to him, and that the only treatment indicated for his condition was psychiatric medication. Because of the clear showing that the department would neither automatically

identify him as needing, nor provide him with, further evaluation of his illness, the sentencing judge could properly decline to sentence McLeod to prison under the statute. There was no need for the judge to reach the constitutional questions after having decided that McLeod's statutory rights would be violated by sending him to prison. Further, noncompliance by the Department of Corrections with the statutory mandate for evaluation and treatment cannot render an otherwise constitutional statute unconstitutional.

6. The trial judge expressed the view in her opinion that probation with treatment as a condition of probation was not an available and acceptable alternative under the statute and that the only acceptable treatment involved long-term inpatient care at a state hospital. There is no indication that consideration was given to treatments other than long-term inpatient care in a state hospital, *e.g.,* placement in a halfway house or other supervised living situation, with close supervision by a probation officer. It may be that McLeod could properly have been placed on probation if alternative forms of supportive care could be provided. The decision that the defendant's statutory rights would be violated by imposition of a prison sentence makes it unnecessary to decide whether it is permissible for a sentencing judge to rest a decision not to incarcerate only upon the dangers posed to the defendant by conditions in the correctional system or whether the judge may for such a reason refuse to impose a sentence mandated by statute.

Justice Williams, joined by Justice Moody, agreed with Justices Ryan and Levin that the trial court erred in finding the statute unconstitutional. They agreed with Justice Levin that the trial judge had authority to conduct hearings to determine what psychiatric treatment would be provided to McLeod under the various statutory alternatives. They agreed with Justice Ryan that the presentence inquiry cannot be conducted without making the Department of Corrections or of Mental Health a party to the inquiry.

The judgment of the Court of Appeals is affirmed.

77 Mich App 327; 258 NW2d 214 (1977) affirmed.

OPINION BY RYAN, J.

1. CRIMINAL LAW — SENTENCING — GUILTY BUT MENTALLY ILL — RIGHT TO TREATMENT.

The statute which permits finding a defendant guilty but mentally ill grants an unequivocal statutory right to such treat-

ment as is psychiatrically indicated for his mental illness or retardation (MCL 768.36; MSA 28.1059).

2. CRIMINAL LAW — SENTENCING — GUILTY BUT MENTALLY ILL — RIGHT TO TREATMENT — JUSTICIABLE ISSUE.

*A sentencing court erred in attempting to determine whether treatment would be provided to a defendant found guilty but mentally ill because matters relating to post-sentence treatment are prematurely raised before sentencing; speculation that the Department of Corrections or the Department of Mental Health will not follow the statute does not support a conclusion that compliance with the statute is "impossible", and does not afford the departments a reasonable opportunity to comply with the statutory mandate (MCL 768.36; MSA 28.1059).*

3. CRIMINAL LAW — SENTENCING — GUILTY BUT MENTALLY ILL — RIGHT TO TREATMENT — JUSTICIABLE ISSUE.

*An attempt by a sentencing judge to conduct a review of the constitutionality of the rules and practices of the Department of Corrections prior to the commitment of a defendant as guilty but mentally ill is premature where the commitment is properly authorized under the statute; furthermore, it is logically impossible to conclude that the statutorily required treatment will not be provided until the defendant undergoes evaluation in the custody of the Department of Corrections to determine what treatment is psychiatrically indicated for his mental illness or retardation (MCL 768.36; MSA 28.1059).*

4. CONSTITUTIONAL LAW — STATUTES — CRIMINAL LAW — GUILTY BUT MENTALLY ILL — RIGHT TO TREATMENT.

Noncompliance by the Department of Corrections with the statutory mandate for evaluation and treatment for a defendant found guilty but mentally ill cannot render unconstitutional an otherwise constitutional statute (MCL 768.36; MSA 28.1059).

5. CRIMINAL LAW — SENTENCING — GUILTY BUT MENTALLY ILL.

A sentencing court was an inappropriate forum to determine that the sentencing provisions for persons found guilty but mentally ill could not and would not be implemented by the Department of Corrections and the Department of Mental Health where the responsible departments were not before the court as parties and were not afforded a full and fair opportunity to develop a factual record in the matter; a finding by the sentencing court that the conditions at Department of Corrections facilities posed a threat of immediate and irreparable injury to the

defendant being sentenced does not impair this holding where the finding was made on an inadequate factual record (MCL 768.36; MSA 28.1059).

6. CONSTITUTIONAL LAW — CRUEL AND UNUSUAL PUNISHMENT —
   CRIMINAL LAW — SENTENCING — GUILTY BUT MENTALLY ILL —
   RIGHT TO TREATMENT.

   *It is not established in a sentencing court that a defendant who is adjudged guilty but mentally ill will not be afforded the treatment to which he has a statutory right nor that the operation of the statute violates the Eighth Amendment prohibition of cruel and unusual punishment where no full evidentiary record was properly developed on what treatment was psychiatrically indicated for the defendant, whether it would be provided by the Department of Corrections and the Department of Mental Health, and reasons for any failure to provide it (US Const, Am VIII; MCL 768.36; MSA 28.1059).*

7. CRIMINAL LAW — SENTENCING — GUILTY BUT MENTALLY ILL.

   The statute concerning defendants found guilty but mentally ill implicitly requires a sentencing court to obtain a report from the Center for Forensic Psychiatry evaluating the defendant's present mental state prior to sentencing him under the statute (MCL 768.36; MSA 28.1059).

8. CONSTITUTIONAL LAW — CRIMINAL LAW — SENTENCING — GUILTY
   BUT MENTALLY ILL.

   *Defendants found guilty but mentally ill have been found beyond a reasonable doubt to have been guilty of an offense, and mentally ill at the time of the offense, but not insane at the time; they no longer have a right to unfettered liberty because they have been convicted of a crime (MCL 768.36; MSA 28.1059).*

9. CONSTITUTIONAL LAW — DUE PROCESS.

   *Analysis of a claim of a violation of the Due Process Clause focuses on the question of which rights and protections are essential to constitutional procedure in the situation (US Const, Am XIV; Const 1963, art 1, § 17).*

10. CONSTITUTIONAL LAW — DUE PROCESS.

   *The general approach of the Supreme Court of the United States for testing challenged state procedures under a due process claim requires a balancing of the private interest that is affected by the official action, the state's interest in the procedures it has adopted, and how well the procedures protect*

*against arbitrariness in the making of the official decision (US Const, Am XIV).*

11. CRIMINAL LAW — SENTENCING — PROBATION — DISCRETION.

*Probation, in lieu of sentencing, is purely a matter of grace, not of right; it rests in the sound discretion of the court, with the source of the court's authority in the Legislature (MCL 771.4; MSA 28.1134).*

12. CONSTITUTIONAL LAW — DUE PROCESS — CRIMINAL LAW — SEN-TENCING — GUILTY BUT MENTALLY ILL — PROBATION.

Defendants found guilty but mentally ill who are placed on a minimum of five years of probation by the sentencing court are afforded the required due process protection because the sentencing court is required to obtain, before sentencing, a psychiatric report on the defendant's present mental health and the statute provides a procedure for review to allow shortening or discontinuing the period of probation if the reasons for the five-year period no longer obtain; such procedures strike a constitutional balance between the defendant's interest in a period of probation of less than five years and the state's interest in assuring that mentally ill criminals are provided supervised treatment for a time sufficient to determine that their mental health is restored (US Const, Am XIV; Const 1963, art 1, § 2; MCL 768.36; MSA 28.1059).

13. CRIMINAL LAW — SENTENCING — GUILTY BUT MENTALLY ILL — PROBATION.

The apparently mandatory five-year period of probation for a defendant found guilty but mentally ill is actually a qualified command to a sentencing court, which permits it to shorten the presumptive five-year period of probation if a psychiatric report before sentencing or during probation indicates that a shorter period would be appropriate; furthermore, the statute clearly authorizes a sentencing court to discontinue probation on the motion of the defendant when there is no further need for treatment (MCL 768.36; MSA 28.1059).

14. CONSTITUTIONAL LAW — EQUAL PROTECTION — CRIMINAL LAW — SENTENCING — GUILTY BUT MENTALLY ILL.

Neither a suspect class nor a fundamental right is involved in the statutory classification for purposes of sentencing of guilty persons who are mentally ill as opposed to guilty persons who are not mentally ill; therefore, the classification will be upheld in the face of an equal protection challenge under the Federal and state Constitutions if it rationally furthers the object of the

legislation (US Const, Am XIV; Const 1963, art 1, § 2; MCL 768.36; MSA 28.1059).

15. CONSTITUTIONAL LAW — EQUAL PROTECTION — STATUTES.

Equal protection of the law does not require that all persons be dealt with identically, but it does require that a distinction made have some relevance to the purpose for which the statutory classification is made (US Const, Am XIV; Const 1963, art 1, § 2).

16. CRIMINAL LAW — SENTENCING — GUILTY BUT MENTALLY ILL — LEGISLATIVE PURPOSE.

*The Legislature's object in creating the verdict of guilty but mentally ill was to assure supervised treatment and care for persons convicted who are found to be suffering from mental illness, in the humane hope of restoring their mental health and possibly thereby deterring future criminal conduct on their part (MCL 768.36; MSA 28.1059).*

17. CONSTITUTIONAL LAW — EQUAL PROTECTION — CRIMINAL LAW — SENTENCING — GUILTY BUT MENTALLY ILL.

The statutory classification which provides that probationary terms for defendants found guilty but mentally ill will be for a rebuttable five-year period, which may be shortened or discontinued if the need for treatment no longer obtains, rationally furthers the legislative object of providing supervised mental health treatment and care to such defendants; therefore, there is no violation of the Equal Protection Clause in the statute's probation provision (US Const, Am XIV; Const 1963, art 1, § 2; MCL 768.36; MSA 28.1059).

CONCURRING OPINION BY LEVIN, J.

See headnotes 1, 4, 8, 13-14.

18. CRIMINAL LAW — SENTENCING — GUILTY BUT MENTALLY ILL.

The obligation to sentence carries with it the responsibility to be informed regarding the conditions under which the sentence imposed will be served and the efficacy of the sentence in securing the interests of society and the defendant, and to avoid imposition of a sentence violative of the defendant's statutory or constitutional rights; the sentencing judge has a responsibility to the offender as well as to society at large and should not impose a sentence upon a defendant who has been adjudged guilty but mentally ill based upon erroneous assumptions about the available resources for treatment and whether and how they will be applied (MCL 768.36; MSA 28.1059).

19. CRIMINAL LAW — SENTENCING — GUILTY BUT MENTALLY ILL.

A judge who has reason to believe that no treatment will be provided to a defendant found guilty but mentally ill pursuant to a statute which creates a right to treatment in a defendant sentenced under it may properly hold a presentence hearing and make a record to determine whether such a sentence may lawfully be imposed if the right to treatment would not, under existing conditions, be honored (MCL 768.36; MSA 28.1059).

20. CRIMINAL LAW — SENTENCING.

*It is the trial judge's duty in passing sentence to protect the defendant's statutory and constitutional rights; if a sentence violates those rights, it cannot lawfully be imposed.*

21. CRIMINAL LAW — SENTENCING — GUILTY BUT MENTALLY ILL — REMEDIES.

*Persons who are adjudged to be guilty but mentally ill and assert that they face irreparable injury to their statutory and constitutional rights by the failure of the Department of Corrections and the Department of Mental Health to provide the statutorily required treatment can properly expect the Supreme Court to provide a meaningful remedy; what the Court cannot properly do is to relegate such persons who have substantial claims to a procedure that it should know will not provide effective relief (MCL 768.36; MSA 28.1059).*

CONCURRING OPINION BY WILLIAMS, J.

See headnotes 5, 19, 20.

22. CRIMINAL LAW — SENTENCING — GUILTY BUT MENTALLY ILL.

*A presentence inquiry into the treatment available for a defendant who has been adjudged guilty but mentally ill cannot be conducted without making the Department of Corrections or of Mental Health a party to the inquiry; common fairness requires that the departments inquired into have an opportunity to present testimony, and neither the trial court nor a court on appeal has a fair and adequate record for judgment where the departments have no opportunity to present testimony (MCL 768.36; MSA 28.1059).*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Timothy A. Baugh-*

*man,* Assistant Prosecuting Attorney, for the people.

*Bruce T. Leitman* for defendant.

RYAN, J. *(to affirm).* Leave to appeal was granted in this case to address several challenges to the constitutionality of the "guilty but mentally ill" verdict established by 1975 PA 180. We agree with the Court of Appeals that on the record in this case there is no showing of a clear and inevitable conflict between this new verdict and either the United States or Michigan Constitution. We affirm the judgment of the Court of Appeals.

I. THE STATUTE

1975 PA 180 established a new verdict heretofore unknown to the jurisprudence of our state— guilty but mentally ill.

The statute provides, in pertinent part, that

"(1) If the defendant asserts a defense of insanity in compliance with section 20a, the defendant may be found 'guilty but mentally ill' if, after trial, the trier of fact finds all of the following beyond a reasonable doubt:
"(a) That the defendant is guilty of an offense.
"(b) That the defendant was mentally ill at the time of the commission of that offense.
"(c) That the defendant was not legally insane at the time of the commission of that offense." MCL 768.36(1); MSA 28.1059(1).

Section 20a, MCL 768.20a; MSA 28.1043(1), establishes certain procedures and rules that are applicable when a defendant in a felony case proposes to offer a defense of insanity.

Mental illness, as used in this statute,

"[M]eans a substantial disorder of thought or mood which significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life." MCL 330.1400a; MSA 14.800(400a).

Once a defendant is found guilty but mentally ill, MCL 768.36(3); MSA 28.1059(3) authorizes the court to impose any sentence which could lawfully be imposed upon any defendant who is found guilty of the same offense. The statute provides that upon commitment to the custody of the Department of Corrections, the defendant shall undergo further evaluation and be given such treatment for his mental illness or retardation as is psychiatrically indicated. Treatment is to be provided by the Department of Corrections or by the Department of Mental Health after transfer to that agency, pursuant to certain statutory procedures.[1]

---

[1] MCL 768.36(3); MSA 28.1059(3) provides:

"(3) If a defendant is found guilty but mentally ill or enters a plea to that effect which is accepted by the court, the court shall impose any sentence which could be imposed pursuant to law upon a defendant who is convicted of the same offense. If the defendant is committed to the custody of the department of corrections, he shall undergo further evaluation and be given such treatment as is psychiatrically indicated for his mental illness or retardation. Treatment may be provided by the department of corrections or by the department of mental health after his transfer pursuant to sections 1000 or 1002 of Act No. 258 of the Public Acts of 1974, being sections 330.2000 or 330.2002 of the Michigan Compiled Laws. Sections 1004 and 1006 of Act No. 258 of the Public Acts of 1974 shall apply to the discharge of such a defendant from a facility of the department of mental health to which he has been admitted and shall apply to the return of such a defendant to the department of corrections for the balance of the defendant's sentence. When a treating facility designated by either the department of corrections or the department of mental health discharges such a defendant prior to the expiration of his sentence, that treating facility shall transmit to the parole board a report on the condition of the defendant which contains the clinical facts, the diagnosis, the course of treatment, and the prognosis for the remission of symptoms, the potential for recidivism and for the danger to himself or the public, and recommendations for future treatment. In the event that the parole board pursuant to law or administrative

MCL 768.36(4); MSA 28.1059(4) establishes certain conditions and procedures for placing a defendant who is found guilty but mentally ill on probation.

The instant challenge to this statute concerns the sentencing provisions of MCL 768.36, subdivisions (3) and (4); MSA 28.1059, subdivisions (3) and (4).

## II. FACTS

The defendant, Joseph McLeod, was charged with arson, a felony, in violation of MCL 750.72; MSA 28.267. He waived a jury trial and asserted a defense of insanity. At the conclusion of his bench trial on May 17, 1976, he was found guilty of arson but mentally ill. The trial court made the three specific findings required under MCL 768.36(1); MSA 28.1059(1).[2]

---

rules should consider him for parole, the board shall consult with the treating facility at which the defendant is being treated or from which he has been discharged and a comparable report on the condition of the defendant shall be filed with the board. If he is placed on parole by the parole board, his treatment shall, upon recommendation of the treating facility, be made a condition of parole, and failure to continue treatment except by agreement with the designated facility and parole board shall be a basis for the institution of parole violation hearings."

[2] The trial court's verdict reads, in pertinent part:

"First of all, I am convinced beyond a reasonable doubt that the offense of arson was committed by the defendant.

"Secondly, I must determine whether or not the defendant was legally sane at the time of the commission of this offense. And then I must determine, if I find the defendant was legally sane, beyond a reasonable doubt, then I must determine whether or not he is guilty but mentally ill.

"Now, the test for mental * * * for legal insanity is whether the defendant lacks the substantial capacity or ability to know that what he was doing is wrong. And whether he had the substantial ability to conform his conduct to the law which he's charged with violating.

"It seems evident to me that the defendant had been drinking that day. And the statute specifically states that drinking in and of itself would not be a defense. In addition, the report of Dr. Danto indicates the defendant may be suffering from amnesia as a result of a large intake of alcohol the day of the offense.

Thereafter the trial court, on its own motion, conducted three hearings to obtain the testimony of certain psychiatrists in an attempt to determine the type of treatment that might be provided to the defendant under the new statute's sentencing alternatives. The court called the assistant director of the Office of Health Care for the Michigan Department of Corrections, the director of the Forensic Department, Northville State Hospital, Michigan Department of Mental Health, and an associate professor of psychiatry at Wayne State University.

After hearing the testimony of these three psychiatrists, obtaining some figures on the rate of transfer of mentally ill patients from the Department of Corrections to the Department of Mental Health, and receiving a post-conviction report concerning the defendant's present mental health from the Recorder's Court Psychiatric Clinic, the trial court filed a written opinion on September 21, 1976.

In its opinion the court found that defendant was presently and chronically mentally ill and required continued care, but held that the treatment mandated by MCL 768.36(3); MSA 28.1059(3) would not be provided if defendant was committed to the Department of Corrections. The court found that the conditions within the Department of Cor-

"I think from the testimony of the defendant and from the reports that have been received into evidence that the defendant could appreciate the wrongfulness of his conduct, and that he had the substantial ability to conform his conduct to the requirements of the law that he is charged with violating.

"I think that what he did was to attract attention to himself in order to get help for himself. Although I think that he was legally sane at the time of committing this act, I think that he was mentally ill and is now mentally ill.

"So that my verdict is guilty but mentally ill. I am going to order that the Forensic Center take custody of him immediately. And present me with a report of their recommendations."

rections, as described by the psychiatrist from that department, posed an immediate threat of irreparable harm to defendant.

The court also found that probation, conditioned on continued in-patient treatment by the Department of Mental Health, was not "a viable [sentencing] alternative because the state will not provide such care". In that connection, the court concluded from testimony by a representative of the Department of Mental Health that the department's policies would require the defendant's release "as soon as the administration of strong anti-psychotic drugs masked the overtly gross symptoms" of his mental illness.[3]

The court found further that the statutory provisions for probationary sentences for persons found guilty but mentally ill, MCL 768.36(4); MSA 28.1059(4), violated state and Federal guarantees of equal protection of the laws by mandating a minimum five-year term of probation for such persons without regard to the existence or extent of their mental illness or the time needed for treatment, while other persons convicted of the same probationable crimes face no such minimum term of probation.

The court held that MCL 768.36(3); MSA 28.1059(3) "is legally inert and cannot be given judicial implementation for the reason that compliance with its provisions as to treatment is impossible and the court is thereby deprived of its authority to enter a judgment of guilty but mentally ill or to sentence [defendant] thereunder".[4]

[3] See footnote 8, *infra.*

[4] The trial court also held that the statute unconstitutionally denied equal protection of the laws to those defendants who believe they are mentally ill but not insane and consequently do not assert the defense of insanity as required to obtain an instruction on the guilty but mentally ill verdict. MCL 768.29a(2); MSA 28.1052(1)(2) and MCL

The court, *sua sponte,* set aside the verdict of guilty but mentally ill, declared it a nullity and granted defendant a new trial, despite the fact that none was requested.

The Court of Appeals granted the prosecutor's emergency petition for leave to appeal, reversed the order of the trial court granting a new trial and remanded the case for sentencing. 77 Mich App 327; 258 NW2d 214 (1977). The Court of Appeals held that the reasons asserted by the trial court to support the finding of unconstitutionality were premature because they all involved speculation that neither the Department of Corrections nor the Department of Mental Health would heed the mandate of the statute. Consequently, the Court of Appeals found no clear and inevitable conflict between the statute and the Constitution on the record presented at that time and remanded the case to the trial court for imposition of sentence.

Following this decision, the trial court sentenced defendant to five years probation with psychiatric treatment to be provided by the Department of Mental Health as a condition of probation. The trial court's written order specifically acknowledged defense counsel's objection to the five-year term of probation. The court stated that it was of the opinion that neither defendant's nor society's needs would be well served by the five-year term of probation and that it would have sentenced defendant to a shorter period of probation but for the mandate of the statute. MCL 768.36(4); MSA 28.1059(4).

Subsequently, this Court granted defendant's

768.36(1); MSA 28.1059(1). This contention was not urged by defendant in his delayed application for leave to appeal nor was it an issue on which leave to appeal was granted. Consequently, it would not be proper for us to consider this challenge to the statute.

delayed application for leave to appeal on the following issues:

"(1) Whether the failure of the Court of Appeals to consider the trial court's factual finding of immediate and irreparable injury to the defendant impairs the ruling of the Court of Appeals that the trial court's action was premature;

"(2) Whether under the circumstances of this case the sentencing court was an appropriate forum for determining that the sentencing provisions of MCL 768.36; MSA 28.1059 cannot be implemented;

"(3) Whether MCL 768.36; MSA 28.1059 violates due process of law because the act itself gives the defendant an undeniable right to such treatment as is psychiatrically indicated for his mental illness, when it is shown factually that defendant will not be afforded such psychiatric treatment;

"(4) Whether the actual operation of MCL 768.36; MSA 28.1059 violates the Eighth Amendment's ban against cruel and unusual punishment;

"(5) Whether subsection (4) of MCL 768.36; MSA 28.1059 which provides a period of probation for those found guilty but mentally ill shall be not less than five years, violates equal protection and due process clauses of the constitutions?" 402 Mich 927-928 (1978).

## III. Tʜᴇ Aᴠᴀɪʟᴀʙɪʟɪᴛʏ ᴏғ Tʀᴇᴀᴛᴍᴇɴᴛ

The first four issues on which leave was granted are considered together because they are each related to the trial court's determination that the treatment mandated by MCL 768.36; MSA 28.1059 would not be provided to defendant.

After careful consideration of the proceedings below, as well as the able argument and enlightening brief of defense counsel, we find ourselves in agreement with the Court of Appeals

"that matters relating to post-sentence treatment, or

lack of treatment, are prematurely raised. The reasons asserted by the trial judge for her finding of unconstitutionality are premature in that they all relate to speculation that the Department of Corrections or the Department of Mental Health will not pay heed to the statute. While future events may prove the trial judge was correct in her surmise, to conclude that compliance with the statute is 'impossible' is inaccurate." 77 Mich App 327, 330; 258 NW2d 214 (1977).

We find, at the outset, that this new statute grants defendant, and other persons who are sentenced pursuant to this new verdict, an unequivocal statutory right to

"such treatment as is psychiatrically indicated for his mental illness or retardation." MCL 768.36(3); MSA 28.1059(3),

upon commitment to the custody of the Department of Corrections, or the right to

"[t]reatment [which] shall be provided by an agency of the Department of Mental Health, or with the approval of the sentencing court and at individual expense, by private agencies, private physicians, or other mental health personnel." MCL 768.36(4); MSA 28.1059(4),

if defendant is placed on probation with treatment as a condition of the probation.

While we recognize that the statute grants a right to such treatment as is psychiatrically indicated, we hold that on this record the sentencing court erred in attempting to determine whether that treatment would in fact be provided. In attempting to do so, the sentencing court failed to afford the departments statutorily charged with the responsibility for providing that treatment a

reasonable opportunity to comply with the statutory mandate. Indeed, in exercising its sentencing function, the trial court did not even have before it the parties statutorily charged with the responsibility for administering the statute's mandates. While a knowledgeable representative from each of the departments charged with certain duties under the statute cooperated with the court in its inquiry into the availability of the mandated treatment, that was not enough. In order for the sentencing court to have properly made the findings it purported to make concerning the actual availability and provision of treatment for defendant, it must first have had the responsible departments before it as parties to a legal proceeding, represented by counsel, and afforded a full and fair opportunity to develop a factual record to determine at least the following:

1) Whether treatment was psychiatrically indicated for defendant;

2) If so, the type and length of the treatment that was psychiatrically indicated;

3) Whether that treatment was being provided or would be provided; and

4) If not, the reasons for the failure to provide such treatment.

The sentencing proceedings below did not afford these departments an opportunity to develop such a record.[5]

The extraordinary procedure followed by the sentencing court in *People v McQuillan,* 392 Mich 511; 221 NW2d 569 (1974), is inapplicable to this situation. In *McQuillan,* this Court found that a

[5] All of the cases cited by defendant as authority for courts to exert control over prison systems in which inmates are deprived of certain constitutional rights are inapposite to the instant case. In each of those cases the officials responsible for providing the care sought were parties to the proceeding before the court.

sentencing court properly assumed jurisdiction pursuant to a "Delayed Motion to Vacate Commitment Order" to review the constitutionality of the automatic commitment statute by which that court had committed defendant to the Department of Mental Health. In a footnote response to the dissenting opinion in *McQuillan,* the majority characterized the procedure followed by that sentencing court as a proper exercise of its jurisdiction to review whether it had authority to commit a person to an institution in the first instance. The Court specifically said this was an altogether different thing from the sentencing judge reviewing whether rules or practices of the correctional authorities denied a person's constitutional rights after a proper commitment, which its opinion would not justify. 392 Mich 523, fn 2.5.

The procedure followed by the sentencing judge in the instant case was an attempt to conduct a review of the rules and practices of the correctional authorities prior to commitment. Commitment was properly authorized under the statute. An attempt to determine before commitment was effected that the rules and practices of the correctional authorities would violate defendant's constitutional rights after commitment was premature. *McQuillan* is not authority for the trial court's actions in this case.

Moreover, until such time as Mr. McLeod "undergo[es] further evaluation" in the custody of the Department of Corrections, as provided by the statute in question, no determination can be made of what "treatment [in the judgment of that agency] is psychiatrically indicated for his mental illness or retardation". Thus, it is logically impossible to conclude that the required care will not be provided.

We are constrained to observe that even if a proper determination could have been made by the trial court that Mr. McLeod would not receive the required treatment, it does not follow that the statute is, *for that reason,* unconstitutional.

Department of Corrections noncompliance with the statutory mandate for evaluation and treatment cannot render an otherwise constitutional statute unconstitutional.

Therefore, we hold that on the record before us the sentencing court was an inappropriate forum to determine that the sentencing provisions of MCL 768.36; MSA 28.1059 could not and would not be implemented. We find that the trial court's factual finding that the conditions at the Department of Corrections facilities posed a threat of immediate and irreparable injury to the defendant was made on an inadequate factual record and consequently does not impair our holding. Finally, because no full evidentiary record was properly developed below, it has not been established that defendant will not be afforded the treatment to which he has a statutory right nor that the actual operation of MCL 768.36; MSA 28.1059 violates the Eighth Amendment's ban on cruel and unusual punishment.[6] On this record those challenges to this statute must fail.

## IV. THE PROBATION PROVISION

A final challenge to the statute remains for our consideration.

Defendant contends that the provision governing the grant of probation to guilty but mentally ill persons violates the equal protection and due proc-

---

[6] US Const, Am VIII.

ess clauses of our Federal and state constitutions[7] by providing that the period of probation "shall not be for less than 5 years". MCL 768.36(4); MSA 28.1059(4).

The challenged statutory provision provides:

"(4) If a defendant who is found guilty but mentally ill is placed on probation under the jurisdiction of the sentencing court pursuant to law, the trial judge, upon recommendation of the center for forensic psychiatry, shall make treatment a condition of probation. Reports as specified by the trial judge shall be filed with the probation officer and the sentencing court. Failure to continue treatment, except by agreement with the treating agency and the sentencing court, shall be a basis for the institution of probation violation hearings. The period of probation shall not be for less than 5 years and shall not be shortened without receipt and consideration of a forensic psychiatric report by the sentencing court. Treatment shall be provided by an agency of the department of mental health, or with the approval of the sentencing court and at individual expense, by private agencies, private physicians, or other mental health personnel. A psychiatric report shall be filed with the probation officer and the sentencing court every 3 months during the period of probation. If a motion on a petition to discontinue probation is made by the defendant, the probation officer shall request a report as specified from the center for forensic psychiatry or any other facility certified by department of mental health for the performance of forensic psychiatric evaluation."

## A. Argument

Defendant contends that the requirement of a minimum period of probation for defendants found to be guilty but mentally ill denies equal protection because it adversely affects their fundamental

[7] US Const, Am XIV; Const 1963, art 1, §§ 2, 17.

liberty interest vis-à-vis defendants found generally guilty of the same probationable offenses, without establishing a compelling state interest for the different treatment. This provision, it is argued, also subjects defendants found guilty but mentally ill to a greater deprivation of liberty than other guilty defendants on the basis of mental illness, without requiring a showing that the mental illness exists at the time of sentencing. Defendant also argues that even if mental illness at the time of sentencing is a legitimate consideration for differentiating between defendants, the statute still offends equal protection because it mandates treatment for the mentally ill class that will not be provided. Consequently, this classification is said to be unconstitutionally arbitrary.

Defendant's final contention is that this provision violates due process by failing to provide a hearing on the issue of mental illness at the time of sentencing before imposing a more severe term of probation on guilty but mentally ill defendants than would otherwise be provided defendants convicted of the same probationable offenses.

### B. Present Mental Illness

We note at the outset that it is our duty to presume the constitutionality of a statute and construe it as constitutional unless the contrary clearly appears. *People v McQuillan,* 392 Mich 511, 536; 221 NW2d 569 (1974); *Sullivan v Michigan State Board of Dentistry,* 268 Mich 427, 429-430; 256 NW 471 (1934).

It is evident from a reading of the probation provision, in the context of the entire statute, that the mental illness of defendants sentenced under it is the basis for the specific statutory directive for a five-year period of probation.

Concededly this provision does not explicitly require an inquiry into a defendant's mental health at the time of sentencing. However, we find that it obviously contemplates such an inquiry and implicitly requires one.

This statutory provision specifically requires the sentencing judge who places on probation a defendant who has been found guilty but mentally ill to make treatment a condition of probation upon the ⸜recommendation of the Center for Forensic Psychiatry. Practically speaking, no such recommendation could be made until the center has been afforded the opportunity to evaluate the defendant's mental health and to determine the need for treatment, if any. Conversely, the sentencing court could not determine that treatment need not be a condition of probation until after it has considered all relevant factors, including the defendant's mental health.

Consequently, we hold that this statute requires a sentencing court to obtain a report from the Center for Forensic Psychiatry evaluating a defendant's present mental health prior to sentencing a defendant found guilty but mentally ill.

## C. Due Process

Defendant appears to contend that more than this is required. He maintains, on the authority of *People v McQuillan, supra,* that guilty but mentally ill defendants are entitled by due process requirements to a hearing on the issue of their present mental health. If defendant means that a full civil commitment hearing akin to that provided in *McQuillan* is required, we do not agree.

*McQuillan* held that a person who had been found not guilty by reason of insanity could not

thereafter and on that basis be committed automatically to the Department of Mental Health. That verdict only established that there was a reasonable doubt as to defendant's sanity at the time of the crime and thus he was not to be held criminally responsible for his acts. Consequently, because institutionalization would constitute a significant restriction on such a person's right to liberty, due process required a sanity hearing to determine that person's present mental condition and equal protection required that the hearing be substantially similar to other civil commitment proceedings. 392 Mich 537.

Guilty but mentally ill defendants are in a wholly different position than defendants found not guilty by reason of insanity. The former have been found beyond a reasonable doubt to have been 1) guilty of an offense, 2) mentally ill at the time of the commission of the offense, and 3) not legally insane at the time of the offense.

They no longer have a right to unfettered liberty. They have been convicted of a crime. Their only interest is in obtaining a term of probation similar to other persons convicted of the same crime.

The *McQuillan* Court recognized that "[d]ue process analysis focuses on the question of which rights and protections are essential to constitutional procedure in a given situation". 392 Mich 530-531.

This is consistent with the general approach taken by the United States Supreme Court for testing challenged state procedures under a due process claim. As recently stated by that Court, its general approach requires a balancing of the private interest that is affected by the official action, the state's interest in the procedures it has

adopted, and how well the procedures protect against arbitrariness in the making of the official decision. *Parham v J R,* 442 US 584, 599-600; 99 S Ct 2493; 61 L Ed 2d 101 (1979).

The private interest that is affected by the official action challenged here is one that is legislatively created. In *People v Rial,* 399 Mich 431, 437; 249 NW2d 114 (1976), this Court recognized, citing MCL 771.4; MSA 28.1134, that probation, in lieu of sentencing, is purely a matter of grace, not of right. It rests in the sound discretion of the trial court, *People v Marks,* 340 Mich 495, 499; 65 NW2d 698 (1954), with the source of the trial court's probation authority in the Legislature. *People v Davis,* 392 Mich 221, 226; 220 NW2d 452 (1974). Consequently, we are not evaluating a restriction on defendant's fundamental right to liberty, but a restriction on the granting of an interest that is legislatively created.

Balanced against this interest is the state's interest in assuring that mentally ill criminals are provided supervised treatment for their mental illness for a sufficient period of time to assure that their mental health is restored.

We find that defendant's interest in the legislatively created sentencing alternative of probation will be protected adequately if the sentencing court is required to obtain a report on defendant's present mental health prior to sentencing and provides a procedure for review to allow shortening or discontinuing the period of probation if the reasons for the five-year period no longer obtain. Such procedures strike a constitutional balance between defendant's interest in a period of probation of less than five years and society's interest in assuring that mentally ill criminals are provided supervised treatment for a period of time sufficient to determine that their mental health is restored.

We have already found that this statute requires a report on defendant's present mental health prior to sentencing. We hold further that the statute permits a sentencing court to place a defendant on probation for a shorter period than five years and provides for periodic review of the continuing need for treatment and a procedure for discontinuing probation when there is no further need for treatment.

The apparently mandatory five-year period of probation is actually a qualified command to sentencing courts. The pertinent statutory language reads:

"The period of probation shall not be for less than 5 years and shall not be shortened without receipt and consideration of a forensic psychiatric report by the sentencing court." MCL 768.36(4); MSA 28.1059(4).

In order to give commonsense meaning to the second phrase of this sentence, we read it as authorizing the sentencing court to shorten the presumptive five-year period of probation if any forensic psychiatric report obtained prior to sentencing or during the period of probation indicates that a shorter period would be appropriate.

Periodic review of the continuing need for treatment is statutorily required:

"A psychiatric report shall be filed with the probation officer and the sentencing court every 3 months during the period of probation." MCL 768.36(4); MSA 28.1059(4).

Furthermore, the statute clearly authorizes a sentencing court to discontinue probation on the motion of the defendant when there is no further need for treatment.

"If a motion on a petition to discontinue probation is made by the defendant, the probation officer shall request a report as specified from the center for forensic psychiatry or any other facility certified by [the] department of mental health for the performance of forensic psychiatric evaluation." MCL 768.36(4); MSA 28.1059(4).

We find these provisions afford guilty but mentally ill defendants who are placed on probation required due process protections.[8]

## D. Equal Protection

We cannot accept defendant's argument that the classification of guilty but mentally ill defendants in the probation provision of this statute infringes on a fundamental right and can only be sustained if it satisfies a compelling state interest. As we have already stated, a guilty but mentally ill defendant has no right to the exercise of unfettered liberty. Such a defendant has been found guilty beyond a reasonable doubt in a judicial proceeding providing the full panoply of rights and protections guaranteed to the criminally accused under both our Federal and state constitutions. Such a defendant's liberty may be constitutionally circumscribed by the state.

---

[8] The trial court found that treatment would not be provided to defendant by the Department of Mental Health on an in-patient basis if in-patient treatment were made a condition of probation.

When defendant was sentenced to probation following the Court of Appeals opinion in this case, "psychiatric treatment proscribed [sic] by the Department of Mental Health, as mandated by [MCL 768.36(4); MSA 28.1059(4)]" was made a condition of probation. Nothing was said about in-patient treatment.

Whether a sentencing court has the authority to order in-patient treatment by the Department of Mental Health as a condition of probation is a question not presently before this Court. We note only that the due process procedures we find appropriate in this case are subject to further review if the question of the propriety of in-patient treatment as a condition of probation under this statute is ever presented to this Court.

Consequently, we construe this argument as a challenge to the legislative classification of guilty persons who are mentally ill vis-à-vis guilty persons who are not. The classification of "mentally ill" in this context has none of the indicia of a suspect class.[9]

Because neither a suspect class nor a fundamental right is involved in this classification, it will be upheld in the face of an equal protection challenge under both our Federal and state constitutions if it rationally furthers the object of the legislation. *San Antonio Independent School Dist v Rodriguez,* 411 US 1, 40, 55; 93 S Ct 1278; 36 L Ed 2d 16 (1973); *McGinnis v Royster,* 410 US 263, 270; 93 S Ct 1055; 35 L Ed 2d 282 (1973); *In re Kasuba Estate,* 401 Mich 560, 568-569; 258 NW2d 731 (1977).

This is also in accord with the statement of the United States Supreme Court quoted approvingly by this Court in *McQuillan,* 392 Mich 534.

"Equal protection does not require that all persons be dealt with identically, but it does require that a distinction made have some relevance to the purpose for which the classification is made." *Baxstrom v Herold,* 383 US 107, 111; 86 S Ct 760; 15 L Ed 2d 620 (1966).

It is apparent that the Legislature's object in creating this new verdict was to assure supervised mental health treatment and care for those persons convicted under the laws of our state who are found to be suffering from mental illness, in the humane hope of restoring their mental health and

---

[9] The traditional indicia of suspectness are: the class is saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process. *San Antonio Independent School Dist v Rodriguez,* 411 US 1, 28; 93 S Ct 1278; 36 L Ed 2d 16 (1973).

possibly thereby deterring any future criminal conduct on their part.

In order to assure this treatment, the Legislature provided that probationary terms for guilty but mentally ill persons will be for a rebuttable five-year period under the continuing supervision of the sentencing court. The Legislature also provided that the probation could be shortened or discontinued if the need for treatment no longer obtained.

We think this classification rationally furthers the legislative object of providing supervised mental health treatment and care to guilty but mentally ill defendants who are placed on probation.

Finally, we cannot find this statute created an arbitrary classification because the mandated treatment would not be provided to guilty but mentally ill defendants placed on probation. We have already held the sentencing trial court was an inappropriate forum to decide this question in this case.

We find no violation of equal protection in the statute's probation provision.

## V. Conclusion

Although we, like the Court of Appeals, are not without sympathy for the commendable objectives of the trial judge, we find no constitutional infirmity in this statute on the record before us.

The judgment of the Court of Appeals is affirmed.

COLEMAN, C.J., and FITZGERALD, J., concurred with RYAN, J.

LEVIN, J. *(concurring in affirmance).* I am in

general agreement with my colleague's analysis of the rights granted and procedures required by the statute creating the verdict of guilty but mentally ill[1] and with his conclusion that the trial court erred in finding the statute unconstitutional.[2]

I write separately because the trial judge acted properly in holding hearings to determine what

---

[1] 1975 PA 180; MCL 768.36; MSA 28.1059.

[2] In addition to the points made elsewhere in this opinion, I agree with Justice RYAN that:

(1) The statute requires a sentencing court to obtain from the Center for Forensic Psychiatry a current report on the present mental health of a person found guilty but mentally ill before sentencing the person pursuant to that verdict;

(2) "[A] defendant's interest in the legislatively created sentencing alternative of probation will be protected adequately if the sentencing court is required to obtain a report on defendant's present mental health prior to sentencing and provides a procedure for review to allow shortening or discontinuing the period of probation if the reasons for the five-year period no longer obtain";

(3) "[T]he statute permits a sentencing court to place a defendant on probation for a shorter period than five years and provides for periodic review of the continuing need for treatment and a procedure for discontinuing probation when there is no further need for treatment";

(4) The probation sentencing provision of the statute does not violate equal protection because the Legislature could rationally establish a rebuttable presumption that a guilty but mentally ill offender requires a substantial minimum period of probation.

In upholding the probation sentencing provision, however, my colleague states:

"[T]he Legislature's object in creating this new verdict was to assure supervised mental health treatment and care for those persons convicted under the laws of our state who are found to be suffering from mental illness, in the humane hope of restoring their mental health and possibly thereby deterring any future criminal conduct on their part."

While the stated object appears to have motivated the Legislature to impose a modifiable requirement of an extended probation period for guilty but mentally ill defendants, we should not attribute the same purpose to the statute as a whole where it is unnecessary to do so. The purpose this statute was designed to serve was not briefed or argued in this case. It may be that different purposes underlie this statute or other portions of it (see Corrigan & Grano, *1976 Annual Survey of Michigan Law: Criminal Law,* 23 Wayne L Rev 473, 474-475 [1977]) and defendants in subsequent cases may argue that those purposes are impermissible or unrelated to the distinctions drawn between guilty but mentally ill offenders and others. We should not prematurely foreclose those arguments.

psychiatric treatment would be provided McLeod under the various alternatives available in sentencing an offender found guilty but mentally ill. This was the announced purpose of the hearings.

The questioning of the psychiatrists whom the judge called to testify focused primarily on what psychiatric treatment McLeod would, could, or should receive if he were sentenced to either prison or probation. Such an inquiry was a proper exercise of the judge's responsibility to determine a sentence appropriate to the individual offender and all the circumstances of the case and not violative of his statutory and constitutional rights.

I agree with my colleague, however, that the judge erred in passing upon the constitutionality of the statute creating the verdict of guilty but mentally ill. Her factual determination that evaluation and treatment required by the statute would not be provided McLeod if he were sentenced to prison and therefore a prison sentence would violate his statutory rights made it unnecessary to decide whether such a sentence would violate his constitutional rights. I also agree with my colleague that the judge erred in holding that the probation sentencing provision of the statute denied equal protection of the laws.

I

The decision of the Court of Appeals reversing the judge's determination that the statute is unconstitutional should be affirmed. The presentence inquiry that she conducted was, however, proper.

A

After finding McLeod guilty but mentally ill of

arson[3] in a bench trial, the judge conducted, on her
own initiative, a pre-sentence hearing at which
testimony was taken from three psychiatrists: Dr.
Dennis Jurczak, Assistant Director of the Office of
Health Care for the Michigan Department of Cor-
rections, Dr. Mario Zamora, Director of the Foren-
sic Department at Northville State Hospital, Mich-
igan Department of Mental Health, and Dr. Eman-
uel Tanay, a private practitioner and Associate
Professor of Psychiatry at Wayne State University.
The judge said that the purpose of the hearings
was to determine what treatment would be pro-
vided to McLeod if he were committed to the
Department of Corrections or placed on probation
with treatment by the Department of Mental
Health made a condition of probation.[4]

After the hearings were completed, the judge
filed a written opinion reviewing the psychiatrists'
testimony[5] and holding the sentencing provisions

---

[3] MCL 750.72; MSA 28.267.

[4] Before taking Dr. Jurczak's testimony, the judge said:

"I have not placed [sic] sentence yet on Mr. McLeod. And the
reason why I have not sentenced him yet is because I wanted to see
what kind of treatment is available to Mr. McLeod. * * *

"And it is my desire to take testimony from [Dr. Jurczak] as to
what treatment would be provided for Mr. McLeod should I sentence
him to Jackson Prison or any other facility under the Department of
Corrections."

When beginning to question Dr. Zamora, the judge remarked:

"The record should reflect we are continuing to take testimony on
the possibility for treating Mr. McLeod after having been found guilty
but mentally ill by the court of arson.

* * *

"[B]asically why we have asked you to appear in court and testified
[sic] today is because I want to find out if I were to place Mr. McLeod
on probation with a stipulation that he be treated by the Department
of Mental Health I want to know what kind of treatment would be
provided by the Department of Mental Health and what would be the
procedure involved."

The judge's questioning of the witnesses was consistent with these
pronouncements. Questioning of Dr. Tanay focused upon his opinion
that McLeod required in-patient institutional care in a state hospital
setting.

[5] The judge's summary of the testimony is reproduced here because

it helps to place her conclusions in perspective:

"Dr. Jurczak testified that he is the only full-time psychiatrist for a prison population of 12,000, although he estimated that at Jackson Prison alone there are probably five to six hundred inmates [out of a population of 5600] who need psychiatric treatment. * * * The psychiatric facilities at Jackson consists of approximately 100 beds in a psychiatric hospital ward known as the 'top six.' Because there is only one registered nurse, most of the nursing is done by inmates. The patients in the 'top six' are psychotic or suicidal. Treatment consists mainly of crisis intervention; if an inmate is acutely disturbed and unmanageable, he's locked in a room and given medication. Dr. Jurczak described the conditions in the ward as 'less than adequate because we don't have professional staff to supervise.' 'Our problems are so acute that these 100 beds are always filled.' * * *

"As to others mentally ill in the prison population, treatment is very limited. Presently there are 250 inmates on potent anti-psychotic medication. Although the doctor described them as needing psychiatric treatment, they receive none. The psychiatrist renews the medication for 60-90 days at a time but because there is no follow-up, there is no guarantee that any given person will receive the prescribed medication. * * *

"When asked what type of treatment would be provided for the defendant, he indicated that the defendant would come to his attention only if he was an extreme management problem. 'The kind of treatment he would get would be at best inadequate.' There is no ongoing treatment other than medication and then no follow-up on that. As a matter of fact, he could be transferred to another institution where there is no psychiatric care at all. The doctor testified that at Jackson the defendant 'would probably be placed in the general population where a person who is mentally ill is at a real disadvantage.' Assaults, both physical and sexual, are common; their personal property is stolen. 'They [the mentally ill] are really at the mercy of the rest of the prison population. * * * [W]e cannot provide them with the kind of protection that often the mentally ill do need within the prison system.' In terms of his mental health 'it would do him more harm than good' to be turned over to the Department of Corrections. *'We do not have the wherewithal to implement the legislation regarding the treatment of mentally ill in the corrections system.'* [Emphasis by trial judge.]

"Although there is provision in the Mental Health Code for transfer of mentally ill individuals from the Department of Corrections to the Department of Mental Health, it appears to be a slow and inadequately utilized procedure. * * * Since the act went into effect, 27 people (presumably representing the most acutely ill) have been recommended for transfer. Of these, 8 hearings have been held, 15 people accepted, but only 11 transferred as of this date. The average wait for a hearing was 2-1/2 weeks. The average wait between acceptance and transfer was three months (ranging from one month to eight months) with one person still waiting to be transferred since November 4, 1975. Of those transferred, one was kept less than a day and three stayed less than a week before being transferred back to the Department of Corrections.

"Dr. Mario Zamora, Director of Northville State Hospital, Forensic

of the statute "legally inert" and unconstitutional for the reasons summarized by my colleague in Part II of his opinion. She thereupon set aside the verdict of guilty but mentally ill and ordered a new trial.

## B

We all agree that a defendant sentenced pursuant to a verdict of guilty but mentally ill is granted, by the statute providing for such verdicts, a right to "such treatment as is psychiatrically indicated for his mental illness or retardation" if he is committed to the custody of the Department of Corrections,[6] or to treatment provided by an agency of the Department of Mental Health or by private sources at individual expense if he is

Department, Department of Mental Health, was also called as a witness by the court. Contrary to the opinion of other experts, he felt that Mr. McLeod 'was not presenting any symptoms suggestive to [him] to keep [McLeod] in the Department of Mental Health.' He indicated that if the court placed Mr. McLeod on probation they would not treat him as an in-patient regardless of the conditions set by the court, and that if the court wanted the defendant treated as an in-patient he would have to be committed to the Department of Corrections.

\* \* \*

"Dr. Tanay \* \* \* diagnosed the defendant as a chronic regressive schizophrenic and described his behavior during the interview as at times rational, at times disjointed, at times appearing to be hallucinating. He testified that the history of the defendant indicates that he does not have the capacity to function independently. If placed in the community he poses a danger both to himself and to society, because it is likely that the defendant would do something of a bizarre or dangerous nature to get himself back into an institution (voices tell him to set fires). He described the defendant as ill beyond curative treatment and in need of what he characterized as continued environmental custodial care in the structured environment of a state hospital. He confirmed Dr. Jurczak's opinion that the defendant has been and would be abused in a prison setting."

Against this background, the judge concluded that McLeod was "in need of continued custodial care in a facility equipped to provide such care to chronically mentally ill persons and that such a place simply does not exist" for a guilty but mentally ill defendant.

[6] MCL 768.36(3); MSA 28.1059(3).

placed on probation and treatment is made a condition of his probation.[7]

The obligation to sentence carries with it the responsibility to be informed regarding the conditions under which the sentence imposed will be served and the efficacy of the sentence in securing the interests of society and the individual defendant, and to avoid imposition of a sentence violative of the defendant's statutory or constitutional rights. The sentencing judge has a responsibility to the offender as well as to society at large and should not impose a sentence based upon erroneous assumptions about the available resources for treatment and whether and how they will be applied.

Judges sometimes refrain from sentencing convicted offenders to jail or prison terms because they are aware that undesirable institutional conditions could lead to suffering or injuries entirely disproportionate to the severity of the offense and not in the societal interest.[8]

My colleague's opinion may be read as suggesting that a judge is powerless to inquire into how a contemplated sentence will be translated into a day-to-day reality for the sentenced offender. This Court should not suggest that a trial judge may not openly and on an evidentiary record, in an attempt to answer questions often resolved on the

---

[7] MCL 768.36(4); MSA 28.1059(4).

[8] While such concerns are seldom openly expressed, one United States District Judge has recently written:

"Sentencing decisions are acutely difficult, not only because they radically affect the lives of offenders and their families, but also because sentencing objectives are frequently at cross-purposes. A prison sentence heavy enough to punish may erase the possibility of rehabilitation. * * * Even the least questionable purpose of imprisonment—incapacitation ('keeping him off the street')—must be weighed against the rape, mayhem, and murder which occur in prison." Lasker, *Presumption Against Incarceration,* 7 Hofstra L Rev 407, 408 (1979).

basis of untested assumptions and informal *ex parte* discussions, inquire whether the consequences and conditions attending particular sentencing alternatives render those sentences appropriate and lawful for an individual offender.

Where a statute creates a right to treatment in a defendant sentenced under one of its provisions, a judge who has reason to believe that no treatment will be provided a defendant sentenced pursuant to that provision may properly hold a hearing and make a record to determine whether the statutory right to treatment will be honored and a prison sentence lawfully imposed. That is what the trial judge did in this case. Insofar as she concluded that she should not commit McLeod to the custody of the Department of Corrections because the statutory promise of "further evaluation and * * * such treatment as is psychiatrically indicated" would not be fulfilled, she acted properly.[9]

## C

My colleague would hold that whether a defendant will or can be provided indicated treatment can only be determined if the Departments of Corrections and of Mental Health are represented

_____

[9] It is said that *People v McQuillan,* 392 Mich 511; 221 NW2d 569 (1974), does not authorize the inquiry conducted by the judge into the practices of the correctional authorities. While *McQuillan,* a case involving a defendant's post-conviction, post-incarceration challenge to the constitutionality of his confinement, is not authority for the judge's actions in this case, by the same token it is not authority for disapproving those actions. Neither of the opinions in *McQuillan* suggests that a judge may not inquire, before sentence is passed and before physical custody of the defendant has been transferred to the appropriate state agency, into whether a particular sentence would be violative of a defendant's statutory or constitutional rights or otherwise inappropriate.

The judge's finding, supported by the evidence, that McLeod's statutory rights would be violated if he were sentenced to prison, justified her decision not to impose such a sentence.

parties to the legal proceeding and are afforded an opportunity to participate in developing the factual record. The implication is that whether indicated psychiatric treatment will or can be provided McLeod or any other defendant is a question which can be resolved only after McLeod or another defendant has been committed to the Department of Corrections, it develops that the evaluation and treatment mandated by statute is nonexistent or inadequate, and he has commenced a civil action to vindicate his rights in a circuit court with jurisdiction or has sought mandamus in the Court of Appeals.

While I agree that such procedures are normally the appropriate means for incarcerated persons to seek to vindicate rights allegedly denied by the conditions of their confinement, McLeod and others found guilty but mentally ill should not be relegated to such a slow and unsure remedy for a wrong which could be avoided by pre-sentence inquiry.

I would hold that a presentence inquiry can be conducted without making the Departments of Corrections and of Mental Health parties to the cause. The prosecuting attorney in commencing a criminal prosecution represents the people of the State of Michigan and can adequately protect their interest. This Court should not hold in effect that a sentencing judge is obliged to impose a sentence that can be shown to be violative of a defendant's statutory or constitutional rights.

Clearly it is as much the judge's duty to protect the defendant's statutory and constitutional rights as it is her obligation to impose sentence. If a sentence is violative of the defendant's statutory or constitutional rights, it cannot lawfully be imposed.

Although it might be desirable, as my colleague would require, for a trial court to have before it the departments charged with the responsibility for administering the statutory mandates, that cannot properly be made a *sine qua non* to relief unless this Court identifies or provides a means whereby a sentencing judge or a defendant can readily bring them before the trial court. Otherwise this requirement would erect an artificial procedural barrier to effective protection of statutory and constitutional rights.

In the instant case, persons in the employ of the correctional and mental health authorities testified. If the prosecuting attorney wished to offer additional testimony he could have done so either by deposition or in-court testimony.

If it is feared that a decision may be made without adequate input from the correctional and mental health authorities, we could by amendment of the court rules require notice to them and an opportunity to be heard before a decision is made. Or we could even require a defendant to join those authorities as parties and, again, identify or provide a means by which this could be done.

What we cannot properly do is relegate persons who have substantial claims to a process that we should know will not provide effective relief.

Persons asserting that they face irreparable injury can properly expect this Court to provide a meaningful remedy. No lawyer can fail to appreciate how devoid of meaning is a procedure which requires a defendant to encounter predictable noncompliance with statutory and constitutional requirements for such time as may provide the authorities with "a reasonable opportunity to comply with the statutory mandate", to secure counsel

to commence a civil action[10] when that indetermi-
nate time has elapsed, to have the action com-
menced, and to obtain a hearing and await appel-
late review. Years would go by before a final
decision by the appellate courts which, indeed,
might order further hearings on remand with still
further appellate review.

## D

Nor do I agree that "it is logically impossible to
conclude that the required care will not be pro-
vided" until a defendant sentenced as guilty but
mentally ill undergoes further evaluation in the
custody of the Department of Corrections. I would
require a hearing upon the department's ability to
furnish indicated treatment to be held in every
case where the defendant requests such an inquiry
and the judge does not rule out imprisonment as a
sentencing alternative. Guilty but mentally ill
defendants should not be sentenced to prison un-
less it affirmatively appears that the statutory
right to treatment will be implemented.

Psychiatric reports and testimony presented to a
trial court may afford a sufficient basis for assess-
ing what treatment is psychiatrically indicated
and predicting whether the department can pro-

---

[10] While this Court has held that an indigent person is entitled in
particular circumstances to the appointment of counsel at state
expense although the relevant legal proceedings might be character-
ized as civil in nature, *People v David Johnson,* 407 Mich 134; 283
NW2d 632 (1979) (civil contempt proceedings against witness for
failure to testify before grand jury), *Artibee v Cheboygan Circuit
Judge,* 397 Mich 54; 243 NW2d 248 (1976) (paternity action), no
Michigan appellate decision obliges the state to provide counsel to
incarcerated persons who are indigent to enable them to maintain an
action challenging the conditions of their confinement. That is not to
say that such a right to counsel should not be recognized. One can
foresee additional years of litigation over whether such a right should
be recognized. If it is not, the right to maintain civil proceedings
against the responsible authorities may be entirely illusory.

vide such treatment. The Center for Forensic Psychiatry should address this question as part of the presentence report on the defendant's present mental health held today to be required, but its judgment is not controlling and the defendant may introduce proofs.

Such a requirement concededly poses practical difficulties, including the prospect of numerous and often repetitious hearings, inconvenience to correctional officials and psychiatric staff called to testify regarding department capabilities, and difficult new questions for trial courts: What treatment (if any) is psychiatrically indicated for defendant? Is a particular form of recommended care "treatment"? Is the treatment available substantially identical to the treatment indicated?

Nevertheless, these difficulties are not insurmountable. To allow such considerations to dissuade us from instituting a procedure to avert violations of defendants' rights would echo the correctional authorities' plea: "We do not have the wherewithal" to secure offenders the rights conferred by the statute. I do not believe we are so devoid of resources or options.

The number of "guilty but mentally ill" verdicts returned is not overwhelming and the hearings we would require are not likely to be time consuming. One source indicates that 57 "guilty but mentally ill" defendants were committed to the custody of the Department of Corrections during roughly the first three years of the statute's operation.[11] The presentence testimony obtained from three psychiatrists in this case covers only 59 pages of transcript and might have been considerably shorter if the issue had been more narrowly defined.

[11] Brown & Wittner, *1978 Annual Survey of Michigan Law: Criminal Law,* 25 Wayne L Rev 335, 358, fn 144 (1979).

The testimony of state officials and psychiatrists could be taken by arranging depositions at their places of employment, and testimony adduced in one case might be incorporated by stipulation in the case of another defendant having a similar condition. This Court could, if it proved necessary, develop special procedures to expedite resolution of these cases. We could, for example, order consolidation of cases presenting the same post-"guilty but mentally ill" verdict issues for purposes of resolving those issues alone or direct appointment of psychiatrists to act as special factfinders to aid sentencing courts in settling these matters.

The hearings just described should be held if timely requested by any defendant found guilty but mentally ill and not yet sentenced when this opinion is released or by any defendant hereafter found guilty but mentally ill. Hearings should also be required in all cases presently pending on appeal in which an express challenge to the verdict or sentence based upon alleged inability of the Department of Corrections to provide required treatment was made before or at sentencing.

In the instant case the judge heard testimony establishing that if McLeod were committed to the custody of the department as guilty but mentally ill, he would probably not "undergo further evaluation and be given such treatment as is psychiatrically indicated for his mental illness or retardation" unless he manifested symptoms that attracted attention to him and the only treatment indicated for his condition was psychiatric medication.

Whatever treatment might have been appropriate for McLeod,[12] the clear showing that the de-

---

[12] A question which we are not required to decide but which is suggested by the record in this case is whether the care the trial

partment would neither automatically identify him as needing, nor promptly provide him with, further evaluation of his illness, demonstrated the department's inability to comply with the statute and the judge could properly decline to sentence McLeod to prison under subsection (3)[13] for that reason.

## E

After a hearing regarding treatment and the

judge sought for McLeod would constitute "psychiatrically indicated treatment" within the meaning of MCL 768.36(3); MSA 28.1059(3).

The judge's opinion recognized that Dr. Tanay "described the defendant as ill beyond curative treatment and in need of what he characterized as continued environmental custodial care in the structured environment of a state hospital". Dr. Tanay testified that "there can be no reasonable expectation that if certain procedures are carried out within some foreseeable future Mr. McLeod would be free of his illness". He indicated a preference for institutionalizing McLeod in a mental health setting rather than a prison setting because McLeod would be prone to suffer indignities and abuse in the penal institution.

One may question whether the Legislature contemplated that a defendant should be "treated" by institutionalizing him in a state mental hospital rather than a prison for the duration of his sentence simply because the hospital setting may be less dangerous or destructive to that individual. One might argue that the statutory guarantee of treatment extends only to remedial measures designed to alleviate a defendant's condition and not to the provision of a more supportive, less hostile institutional environment. On the other hand, the statutory directive that the defendant be "given such treatment as is psychiatrically indicated for his mental illness *or retardation*" (emphasis supplied) may support the opposite conclusion since the notion of treatment for retardation appears more consistent with providing a supportive environment than supplying psychiatric medication or psychotherapy.

We note that 1978 PA 636; MCL 330.2001 *et seq.;* MSA 14.800(1001) *et seq.*, establishes procedures for the transfer to the Center for Forensic Psychiatry program, under the jurisdiction of the Department of Mental Health, of prisoners certified as requiring psychiatric inpatient services. "Psychiatric inpatient services" is defined as including "milieu for social and recreational activities". MCL 330.2001b(4); MSA 14.800(1001b)(4). But see MCL 330.2003, subds (a)-(b); MSA 14.800(1003), subds (a)-(b).

The effect, if any, of this statute on persons convicted as guilty but mentally ill has not been briefed. However, it does not appear that this statute purports to supersede rights granted by the statute establishing the verdict of guilty but mentally ill.

[13] MCL 768.36(3); MSA 28.1059(3).

likelihood of its being provided, a judge, as an alternative to not imposing a prison sentence, might sentence an offender to prison and order that the psychiatrically indicated treatment be provided.

This approach presents its own difficulties. In order to enforce such an order, the sentencing court would have to acquire jurisdiction over the correctional authorities. Apart from the jurisdictional obstacle, such a procedure would invite the enforcement problems associated with court-ordered mandates which tend to make courts circumspect about ordering such relief.[14]

F

There was no need for the judge to reach constitutional questions that might be implicated if McLeod were sentenced to prison. Having decided that McLeod's statutory rights would be violated by such a sentence, she should have refrained, under familiar principles, from reaching those constitutional issues.

Further, I agree with my colleague that "Department of Corrections noncompliance with the statutory mandate for evaluation and treatment

[14] There may be cases where a judge properly concludes that the Department of Corrections is not presently capable of providing indicated treatment to a guilty but mentally ill defendant yet the defendant is so apparently dangerous that the judge cannot in good conscience release him into the community on probation. In such circumstances, the judge may defer sentencing for a short time to enable the Department of Corrections to develop a plan and the capacity to provide the defendant with treatment. If jurisdiction cannot otherwise be obtained, the judge might request the department to submit to the jurisdiction of the court so that the judge could enter an enforceable order directing the department to provide indicated treatment at the time a prison sentence is imposed. The responsible state agencies should be capable of responding so that an obviously dangerous person is not released into the community.

cannot render an otherwise constitutional statute
unconstitutional".

## II

I offer a few additional observations suggested
by the judge's opinion.

Although the judge ultimately, after reversal by
the Court of Appeals, placed McLeod on probation,
she had expressed the view in her opinion that
sentencing McLeod to probation with treatment as
a condition of probation was not an available and
acceptable alternative under the statute. In my
opinion, probation might have been from the first
an available and acceptable alternative. The
judge's insistence that the Department of Mental
Health was unwilling to provide the treatment
McLeod needed stemmed from her premise that
the only acceptable treatment alternative involved
long-term inpatient care in a state hospital. There
is no indication that consideration was given to
alternatives combining other forms of supportive
care, *e.g.,* placement in a halfway house or other
supervised living situation, with close supervision
by a probation officer. It may be that McLeod
could properly have been placed on probation if
alternative forms of supportive care could be pro-
vided. Accordingly, I agree with the Court of Ap-
peals and my colleague that the judge should not
have granted McLeod a new trial on the ground
that he could not be sentenced.

Protecting McLeod from victimization in prison
is also a theme which sounds strongly in the
judge's opinion, but that issue raises a set of
different questions not peculiar to the guilty but
mentally ill verdict. It has already been noted that
judges often elect—without holding extensive hear-
ings—not to sentence offenders to prison because

of their awareness of conditions within the correctional system. The judge's decision that McLeod's statutory rights would be violated by imposition of a prison sentence makes it unnecessary to decide whether it is permissible for a sentencing judge to rest a decision not to incarcerate upon that ground alone or whether the judge may for such a reason refuse to impose a sentence mandated by statute.

I would affirm the decision of the Court of Appeals for the reasons set forth in this opinion.

KAVANAGH, J., concurred with LEVIN, J.

WILLIAMS, J. *(concurring in affirmance).* My colleagues RYAN and LEVIN have amply analyzed the facts and the law of this case, and I am in partial agreement with both of them. First, I agree with both that the trial court erred in finding the statute unconstitutional. Second, I very much agree with my Brother LEVIN that the trial judge had authority to hold hearings to determine what psychiatric treatment would be provided McLeod under the various statutory alternatives. Third, I agree with my Brother RYAN that the presentence inquiry cannot be conducted without making the Department of Corrections or of Mental Health a party to the inquiry. Common fairness requires that the departments inquired into have an opportunity to testify, and, without criticizing the testimony proffered in the instant case, neither the trial court nor a court on appeal has a fair and adequate record for judgment where the departments have had no opportunity to testify.

BLAIR MOODY, JR., J., concurred with WILLIAMS, J.